EL PUEBLO DE PUERTO RICO, apelado, *v.* LYDIA ECHEVARRÍA RODRÍGUEZ, acusada y apelante; EL PUEBLO DE PUERTO RICO, apelado, *v.* DAVID LÓPEZ WATTS, acusado y apelante.

*Números:* CR-86-58      *Resueltos:* 28 de junio de 1991
CR-86-59

*Héctor Lugo Bougal*, abogado de la apelante; *Carmen Ana Rodríguez Maldonado*, abogada del apelante; *Rafael Ortiz Carrión, Procurador General, Norma Cotti Cruz, Subprocuradora General, Ricardo Alegría Pons, Procurador General Auxiliar, Josefa A. Román García, Procuradora General Auxiliar, Nilda P. Fuentes Ortiz, Procuradora General Auxiliar,* y *Antonio M. Sagardía, Fiscal Auxiliar*, abogados de El Pueblo.

EL JUEZ PRESIDENTE SEÑOR PONS NÚÑEZ emitió la opinión del Tribunal.

Voto del Juez Asociado Señor Andréu García sobre la segunda moción de reconsideración y solicitud para que se deje sin efecto la sentencia dictada.

La apelante Lydia Echevarría Rodríguez ha presentado una segunda moción de reconsideración en la que solicita que se deje sin efecto nuestra sentencia del pasado 25 de abril de 1991 por razón, entre otras, de que "no es propio que el Honorable Juez Andr[é]u García haya advenido a intervenir en la deliberación del presente caso". Segunda moción de reconsideración y solicitud para que se deje sin efecto la sentencia dictada, pág. 2.

En *Noriega Rodríguez v. Gobernador*, 120 D.P.R. 267, 277 (1988), este Tribunal expuso la práctica que impera en este Foro respecto a la inhibición de sus miembros del modo siguiente:

Las normas de inhibición, tendentes a eliminar el potencial de prejuicio, arbitrariedad y a establecer las garantías de una decisión justa para las partes, imponen principios de conducta que van dirigidos a la conciencia judicial individual. En la gran mayoría de los casos en el seno de este Foro los Jueces han declarado su inhibición o su no intervención *sua sponte* sin mediar petición a los efectos. Siempre ha existido un total poder de apreciación individual sobre la procedencia de la inhibición formalmente solicitada, o las provistas por la Regla 3(e) del Reglamento del Tribunal Supremo, 4 L.P.R.A. Ap. I-A. En fin, tradicionalmente entre los miembros de este Tribunal siempre ha prevalecido el principio de que "[c]ontra los estados de inhibición moral no puede imperar la regla de la necesidad". *Pizarro Ortega v. Tribunal Superior*, 100 D.P.R. 774, 776 (1972); *In re Andréu Ribas*, 81 D.P.R. 90, 124 (1959); *Santiago v. Superintendente de la Policía*, 112 D.P.R. 205, 212 (1982); *Colegio de Abogados de P.R. v. Schneider*, 112 D.P.R. 540, 561 (1982).

Esta práctica está a tono con la mejor doctrina y precedentes. No vemos fundamentos que ameriten alterarla. Por el contrario, razones de peso también percibidas por la mayoría de los foros colegiados estatales de última instancia y el propio Tribunal Supremo federal, nos obligan hoy a reafirmarla. La decisión sobre la recusación de un Juez de este Tribunal es individual y no plenaria. *Corresponde a él y su conciencia resolver cualquier planteamiento de esta índole.* (Énfasis suplido y en el original.)

Después de haber examinado cuidadosamente la mencionada moción, no hemos encontrado razón jurídica, moral o de otra naturaleza que impida a este Magistrado intervenir en el presente recurso. Las alegaciones contenidas en la segunda moción de reconsideración no sólo resultan ser infundadas, sino que son meras especulaciones. No he intervenido en procedimiento alguno que estuviera vinculado, directa o indirectamente, con los procesos seguidos en contra de los apelantes y jamás he sido consultado por persona alguna sobre el particular.

No existe en este caso la más mínima apariencia de conflicto de parte de este Magistrado. Como señaló el Juez Presidente Señor Pons Núñez en *Noriega Rodríguez v. Gobernador*, 120

D.P.R. 417, 421 (1988), "[a]*pariencia no es sinónimo de espejismo*". (Énfasis en el original.) Es curioso que la apelante y su representante legal hacen constar de entrada en su escrito "que el abogado de la señora apelante mantiene *relaciones altamente cordiales* con el Honorable Juez José Andréu García", sin embargo, no es a esas sino a las supuestas relaciones "con las más altas figuras del gobierno" a las que atribuye un efecto parcializador en el ánimo de este Magistrado. Segunda moción de reconsideración y solicitud para que se deje sin efecto la sentencia dictada, págs. 1 y 2.

Debido a las razones antes expresadas, decido continuar participando en este recurso.

—O—

Opinión del Tribunal emitida por el Juez Presidente Señor Pons Núñez.

(En reconsideración)

El 25 de abril de 1991 este Tribunal, mediante sentencia dictada al efecto, confirmó las convicciones emitidas por el Tribunal Superior de Puerto Rico, Sala de San Juan, en los casos *El Pueblo de Puerto Rico v. Lydia Echevarría Rodríguez*, Criminales Núms. G-85-2477, G-85-2479, G-85-2481 y G-85-2483, y *El Pueblo de Puerto Rico v. David López Watts*, Criminales Núms. G-85-2480, G-85-2482, G-85-2484 y G-85-2485.

La apelante Lydia Echevarría Rodríguez presentó el 2 de mayo de 1991 las mociones siguientes: Moción de reconsideración, Moción de señalamiento de la moción de reconsideración, Moción para la retención del mandato, Moción en solicitud de investigación y Moción en solicitud de que se deje sin efecto la sentencia dictada. El 9 de mayo, y después de que el señor Procurador General (Procurador) presentara, a su vez, una Moción de Réplica, compareció nuevamente la apelante en contestación a la misma con una Segunda Moción de Reconsideración y Solicitud para que se Deje sin Efecto la Sentencia Dictada. El 15 de mayo

de 1991 comparece la apelante en Tercera Moción de Reconsideración de Carácter Extraordinario y Urgente y Solicitud de Señalamiento. Por último, el 10 de junio de 1991 la señora Echevarría Rodríguez presentó ante este Tribunal un Memorándum de Dúplica, Reiteración de que este Honorable Tribunal Reconsidere la Sentencia Dictada y Solicitud de Vista Oral.

I

A los fines de que puedan enmarcarse adecuadamente las cuestiones que en adelante se discuten, reproducimos a continuación los hechos que dieron lugar a la convicción de los apelantes en estos casos, según éstos fueran resumidos en la opinión mayoritaria emitida en este caso el 25 de abril de 1991.

A principios de la pasada década la apelante Echevarría Rodríguez estaba sufriendo una crisis matrimonial originada por la separación de su esposo, la cual se agravó por los celos que ella sentía. La situación desembocó en serias desavenencias con su cónyuge, el productor de televisión y destacado miembro de la farándula, Sr. Luis Vigoreaux.

Para mediados de 1982 la apelante comenzó a gestionar la contratación de una persona con el fin de "liquidar", tanto al señor Vigoreaux como a su "amiga", la Srta. Nydia Castillo. Para tales fines se comunicó con quien eventualmente resultó ser el testigo clave de este caso, el Sr. Francisco "Papo" Newman, para que éste se ocupara de encontrar alguna persona dispuesta a realizar su objetivo. A principios del año 1983, Newman consiguió por fin a una persona dispuesta a aceptar la oferta: el aquí apelante Sr. David López Watts. Adujo el Ministerio Público que los apelantes y Newman se reunieron en la casa de la señora Echevarría Rodríguez con el fin de planificar los pormenores del acto delictivo a cometerse. Así las cosas, y tras la ocurencia de varios incidentes desagradables dentro del triángulo amoroso, la apelante Echevarría Rodríguez procedió a informarle a Newman que para el 17 de enero de 1983 se llevaría a cabo una reunión entre Vigoreaux, ella y sus respectivos abogados en el Condominio El Centro —en Hato Rey— con el propósito de finalizar los trámites del divorcio.

Con esta información a su haber, Newman y el apelante López Watts se apostaron cerca del lugar donde se celebraba la reunión y

esperaron su conclusión. Una vez Vigoreaux se marchó del lugar con su abogado, Newman y López Watts procedieron a seguir el automóvil de Vigoreaux. Éste se dirigió hasta la oficina de su abogado, donde se quedó este último. Acto seguido, Vigoreaux, solo en su auto, se dirigió en dirección a la residencia de la señorita Castillo. Al detenerse en una intersección en el expreso de Trujillo Alto, con el propósito de virar a la izquierda, Vigoreaux fue interceptado por Newman, quien logró acceso al interior del automóvil por el lado del pasajero con una llave que le suministró la apelante Echevarría Rodríguez y le ordenó a Vigoreaux que se dirigiera a un apartado sector conocido como Los Guanos, en Cupey. López Watts les siguió en el otro automóvil. Una vez arribaron al paraje solitario, López Watts le infligió a Vigoreaux varias heridas con un objeto punzante en distintas partes del cuerpo y luego, dándole por muerto, lo echaron en el baúl de su propio automóvil. Cometida la fechoría, decidieron quemar el vehículo. En ese momento Newman recordó que la apelante le había pedido que sacara un maletín del baúl, y al abrir el mismo, Vigoreaux, aún con vida, le agarró una mano. Entonces Newman le asestó un golpe en la cabeza con una llave de sacar tuercas que estaba en el baúl y volvió a cerrar el mismo. Inmediatamente después, López Watts y Newman se dirigieron a buscar gasolina. López Watts consiguió en la casa de una amiga un envase para la gasolina y compró la misma en una gasolinera sita en Venus Gardens. Regresaron al sector Los Guanos. Allí, Newman regó la gasolina sobre el Mercedes Benz, desechó el envase y procedió a incendiar el auto con la víctima aún viva y aprisionada en el baúl. (Escolios omitidos.) *Pueblo v. Echevarría Rodríguez I*, 128 D.P.R. 299, 313–314 (1991).

## II

En síntesis, la apelante plantea en sus mociones que la sentencia fue dictada contrario a derecho; que las violaciones de los derechos constitucionales de la señora Echevarría Rodríguez constituyen una injusticia; que la excesiva e indebida publicidad que se le dio a su caso vicio los procedimientos y hace imposible la celebración de un juicio justo e imparcial, y finalmente, añade que nuestra opinión en el caso de autos equivale a negarle eficacia a *Lee v. Illinois*, 476 U.S. 530 (1986).

Por otro lado, el también apelante David López Watts presentó ante nos escrito de reconsideración el 8 de mayo de 1991.

Alegó el señor López Watts que desde mucho antes del inicio del proceso en su contra, el Ministerio Fiscal incurrió en una serie de gravísimas actuaciones impropias, cuyo único propósito y resultado fue privarlo de su derecho a un debido proceso de ley y a la celebración de un juicio justo e imparcial.

Luego de examinar detenidamente todas las mociones mencionadas en los casos de autos, concluimos que no se plantea ninguna cuestión nueva que no haya sido objeto de consideración y decidida mediante la opinión del Tribunal de 25 de abril de 1991.

Sin embargo, ante la insistencia de la apelante de invocar el caso de *Lee v. Illinois*, supra, reproducimos y adoptamos, por coincidir con nuestra posición y por su claridad, la respuesta que ha ofrecido al planteamiento el Procurador.

La apelante insiste en invocar a *Lee* vs. *Illinois*, 476 U.S. 530 (1986) y ahora añade que la opinión de este Honorable Tribunal en el caso de autos equivale a negar eficacia a *Lee* bajo derecho estatutario local (Reglas 91–92 de Procedimiento Criminal). La apelante se equivoca; por un lado desvirtúa a *Lee* y por otro lado, desvirtúa lo dicho por este Honorable Tribunal en la opinión.

Por supuesto, *Lee* en cuanto fortalece el derecho a confrontación bajo la Enmienda Sexta, obliga a los Estados y a Puerto Rico. Así lo reconoció este Honorable Tribunal en *Pueblo* vs. *De Jesús Ayuso*, 119 D.P.R. 21 (1987). En la opinión emitida en este caso este Honorable Tribunal explica con precisión el alcance de *Lee*: una declaración de un co-acusado se presume no confiable como prueba sustantiva contra otro co-acusado y no es invocable la declaración contra interés penal para la admisibilidad de tal declaración contra el co-acusado afectado. *Lee* no habla de juicio por separado, pues *Lee* es un caso por tribunal de derecho, en el que no está presente la preocupación de *Bruton* vs. *United States*, 391 U.S. 123 (1968), que declara insuficiente el mecanismo de instrucciones al jurado para permitir una admisión de un co-acusado.

Lo que rige bajo la cláusula de confrontación, según expresado en *Cruz* vs. *New York*, 481 U.S. 186, 193 (1987) es lo siguiente (énfasis suplido):

"We hold that, where a nontestifying codefendant's confession incriminating the defendant *is not directly admissible against the defendant*, see *Lee* vs. *Illinois*, supra, the confrontation clause bars

its admission at their joint trial, even if the jury is instructed not to consider it against the defendant . . . ."

En el caso de autos, toda admisión del acusado López Watts que fue admitida en el juicio era directamente admisible contra la acusada Echevarría, bajo la regla de evidencia sobre declaraciones de conspiradores —Regla 62(E) de Evidencia—, lo que no ofende la cláusula de confrontación: *United States* vs. *Inadi*, 475 U.S. 387 (1986); *Bourjaily* vs. *United States*, 483 U.S. 171 (1987).

Las declaraciones de López Watts (al testigo Cartagena) hechas terminada la conspiración e inadmisibles bajo la regla de los conspiradores, no fueron admitidas. La referencia a las Reglas 90–92 de Procedimiento Criminal y al delito de conspiración se hace —en la opinión emitida por este Honorable Tribunal— por el claro vínculo entre la separación de juicios de co-acusados y la admisibilidad contra ambos de las declaraciones de uno, cuando satisfacen los requisitos de la regla de evidencia sobre declaraciones de conspiradores. Si la declaración o admisión de uno es independiente o directamente admisible contra el otro, no hay necesidad de separar los juicios, y no se viola el derecho a confrontación. Ese, y no otro . . . es el derecho aplicable. Breve réplica a tercera moción de reconsideración, págs. 1–2.

## III

■ A. Resulta pertinente, a los efectos de que exista clara constancia de lo realmente acontecido en los procedimientos de instancia, que hagamos referencia a la cuestión que en su opinión en reconsideración plantea el Juez Asociado Señor Rebollo López, referente a la improcedencia de este proceso, por haber existido otro proceso anterior contra la apelante Echevarría Rodríguez, el cual se había desestimado en sus etapas preliminares, sin perjuicio, bajo las disposiciones de la Regla 64(p) de Procedimiento Criminal, 34 L.P.R.A. Ap. II.

En primer lugar, es de rigor puntualizar que, como se reconoce en la opinión disidente, la señora Echevarría Rodríguez *no* levantó ni discutió esa cuestión *directamente como error en su apelación ni en* ninguna de *las mociones de reconsideración* que ha presentado ante nosotros. No lo planteó como error en esta ocasión, pues ya había presentado anteriormente la misma cues-

tión que ahora se expone en la opinión disidente, y este Tribunal había rehusado revisar dictaminando un no ha lugar al recurso instado.(1)

El apelante López Watts tampoco hace un señalamiento directo de error con referencia a la improcedencia de este proceso en su contra por razón del comienzo de un proceso anterior contra la apelante Echevarría Rodríguez. Es sólo indirectamente, como parte de la discusión de sus señalamientos de error tercero y cuarto,(2) que menciona esta cuestión. Entendemos que el propio apelante trata el asunto en esa forma, pues es consciente de que *no puede constituir error en cuanto a él toda vez que él no fue acusado en el primer procedimiento.*

Aun cuando a nuestro juicio lo anterior dispone de la cuestión, por entender que la argumentación sobre este punto contenida en la opinión disidente constituye un error y que por su extensión puede dar lugar a confusión, aprovechamos la oportunidad para ampliar los pronunciamientos que sobre este asunto hiciéramos en nuestra opinión de 25 de abril de 1991. Para ese fin se precisa una cronología de los hechos relevantes al primer procedimiento que se inició, por la muerte del Sr. Luis Vigoreaux, contra Doña Lydia Echevarría Rodríguez y los hermanos Rubén y Jorge J. Guadalupe Núñez el 2 de septiembre de 1984.

1. El procedimiento comenzó con una determinación de causa probable para *arresto* fundada, esencialmente, en el testimonio del ciudadano Juan Orlando Sepúlveda, también conocido como "Bronco".

---

(1) Caso Núm. O-85-346, Resolución de 31 de mayo de 1985, la cual obtuvo la conformidad del Juez Presidente Señor Trías Monge y de los Jueces Asociados Señores Irizarry Yunqué, Negrón García y Ortiz. El Juez Asociado Señor Rebollo López no intervino.

(2) *Tercer y cuarto error (López Watts)*

"La conducta impropia observada por los fiscales a lo largo del proceso, privó al acusado de un juicio justo e imparcial y de contar con un debido proceso de ley."

"Cometió grave error el Tribunal de Instancia al admitir evidencia y al permitir que se continuara el proceso a[u]n cuando se estableció la ocultación de prueba por el Ministerio Público, no empece haber sido advertidos por el Tribunal mediante orden y gestión de la defensa, sobre la necesidad de revelar toda la evidencia en su poder a ser utilizada en el juicio. Todo ello en violación a la garantía constitucional del debido proceso de ley." Caso Núm. CR-86–59, Alegato del acusado apelante, págs. 29–30.

2. El testimonio de Sepúlveda sirvió, además, de fundamento para determinar causa probable *en la vista preliminar* correspondiente que dio lugar a la presentación de las acusaciones (Criminal Núms. G-84–3149 a G-84–3166) contra Echevarría Rodríguez y los hermanos Guadalupe Núñez.

3. El 19 de diciembre de 1984 la apelante Echevarría Rodríguez presentó una Moción para Desestimar que, entre otros fundamentos, aduce que no hubo determinación válida de causa probable por un magistrado para presentar acusaciones.

4. El 26 de diciembre de 1984 El Pueblo se opuso a la Moción de Desestimación.

5. Con fecha de *22 de enero de 1985* el imputado Jorge J. Guadalupe Núñez presentó una moción en la que le señalaba al tribunal de instancia que Juan Orlando Sepúlveda había cometido perjurio o mentido en su declaración contra la señora Echevarría Rodríguez.

6. El 19 de febrero de 1985 la apelante Lydia Echevarría Rodríguez presentó una Moción de Desestimación en la que invocó la Regla 247(b) de Procedimiento Criminal, 34 L.P.R.A. Ap. II, y señaló:

(a) que el único testigo en el caso era Juan Orlando Sepúlveda c/p "Bronco";

(b) que él admitió ser perjuro;

(c) que el Ministerio Público siempre supo que el testimonio era perjuro, y

(d) que para no sancionar medios ofensivos a la dignidad de la justicia y al respeto de los tribunales, procedía la desestimación de los cargos en su contra al amparo de la Regla 247(b) de Procedimiento Criminal, *supra*.(3)

7. El 22 de febrero de 1985 el Pueblo presentó una Moción de Suspensión porque había iniciado una reinvestigación de los sucesos.

---

(3) Sin embargo, adviértase que los fundamentos que se aducen son aquellos que únicamente se proveen bajo la Regla 64(p) de Procedimiento Criminal, 34 L.P.R.A. Ap. II.

8. El 25 de febrero de 1985 el tribunal de instancia emitió una resolución en la cual disponía que las partes debían comparecer preparadas para discutir, el 1ro de marzo de 1985, las mociones que estuviesen pendientes. Le ordenó, además, al Secretario de Justicia que mostrara causa por la cual no debía desestimarse el caso por las expresiones que había hecho el 22 de febrero de 1985 y para discutir si el reclamo de una suspensión de noventa (90) días era meritorio.

9. En la vista de 1ro de marzo se concedió tiempo adicional y el 4 y el 14 de marzo de 1991 el Ministerio Público presentó unas mociones(4) en las que defendía su solicitud de paralización de los procedimientos por noventa (90) días fundado en que:

(a) había que interrogar muchos testigos y estudiar muchas y sofisticadas piezas de evidencia;

(b) había que reinvestigar muchos ángulos del caso, y

(c) se perjudicarían los intereses de El Pueblo si lo obligaban a ver un caso que estaba reinvestigando y para el cual no estaba preparado.

10. Al concedérsele sólo treinta (30) días adicionales para la reinvestigación, el 29 de marzo de 1985 el Ministerio Público presentó una Moción en Auxilio de Jurisdicción y *Certiorari* (Núm. O-85-188) ante el Tribunal Supremo y éste ordenó la paralización de los procedimientos en instancia.(5)

11. El 3 de abril de 1985, mediante resolución, el Tribunal Supremo ordenó que se elevaran los autos originales del caso.(6)

12. El 14 de abril de 1985 el Ministerio Público inició un nuevo procedimiento contra la apelante Echevarría Rodríguez mediante la presentación de nuevas acusaciones contra ésta y sometió acusaciones contra Juan Orlando Sepúlveda por los cargos de perjurio al implicar falsamente en el primer procedimiento a Lydia Echevarría con Edgardo Vázquez Reyes, Rubén, Pablo y Jorge J. Guadalupe Núñez en el asesinato de Luis Vigoreaux.

---

(4) Por su importancia se unen copias de dichas mociones a ésta, marcadas como *Addendums* A y A-1.

(5) El Juez Asociado Señor Rebollo López no intervino.

(6) El Juez Asociado Señor Rebollo López no intervino.

13. El 17 de abril de 1985, mediante una Moción de Desistimiento, el Ministerio Público solicitó que se le permitiera desistir del recurso ante el Tribunal Supremo porque había terminado la reinvestigación.

14. El 18 de abril de 1985 el Tribunal Supremo, *con la intervención de todos sus Jueces de entonces*,(7) dictó resolución:

(a) En la cual ordenó *el archivo del recurso y la devolución a instancia de los autos para la continuación de los procedimientos.*

(b) En la cual dictaminó *no ha lugar a una moción de protección de la jurisdicción que fue presentada por la señora Echevarría Rodríguez y que trataba sobre la procedencia de las nuevas órdenes de arresto* y la prestación de fianza en los nuevos casos porque "viola también los más elementales principios del derecho justo y priva a la aquí compareciente de sus derechos constitucionales . . .". Moción en protección de la jurisdicción de este Tribunal, pág. 1.

15. El 18 de abril de 1985 El Pueblo presentó una moción en la que se allanó a la Moción de Desestimación de la acusada Lydia Echevarría —de 19 de diciembre de 1984— que había sido presentada bajo el fundamento contenido en la Regla 64(p) de Procedimiento Criminal, *supra*. El mismo día el tribunal de instancia dictó la orden siguiente: "Nada que proveer en vista que el caso está paralizado por orden del Honorable Tribunal Supremo."

16. El 19 de abril de 1985 la acusada Lydia Echevarría presentó un aviso para desistir de aquella parte de su moción para desestimar fundamentada en la Regla 64(p) de Procedimiento Criminal, *supra*. No obstante, se reafirmó expresamente en todas sus otras mociones, entre las cuales estaba incluida aquella presentada el 19 de febrero de 1985 en la cual invocaba la Regla 247(b) de Procedimiento Criminal, *supra*, para solicitar la desestimación del caso.

---

(7) Su Presidente, Señor Trías Monge, y los Jueces Asociados Señores Dávila, Irizarry Yunqué, Negrón García y Rebollo López.

17. El 19 de abril la Juez Rivera de Martínez dictó la orden siguiente: "Nada que proveer. El caso aún continúa paralizado. El Tribunal oficialmente no ha recibido información alguna del Honorable Tribunal Supremo."

18. El 3 de mayo de 1985 el tribunal celebró una vista oral y el 20 dictó sentencia en la que decretó la desestimación sin perjuicio de las acusaciones contra la señora Echevarría Rodríguez.

19. El 31 de mayo de 1985 la acusada Echevarría Rodríguez presentó un recurso de *certiorari* contra dicha sentencia ante el Tribunal Supremo, el cual fue declarado no ha lugar en esa misma fecha (O-85–346).

20. El 20 de febrero de 1987 Juan Orlando Sepúlveda Ramos hizo alegación de culpabilidad por el delito de perjurio.

De la anterior cronología resulta claro que:

(a) Desde diciembre de 1984, la señora Echevarría Rodríguez había presentado una moción de desestimación bajo la Regla 64(p) de Procedimiento Criminal, *supra.*

(b) Por lo menos desde el 22 de enero de 1985 las partes conocían que "Bronco" había mentido. Ciertamente el Secretario de Justicia Rivera Cruz lo sabía cuando anunció públicamente el 22 de febrero, un (1) mes después de presentada la moción de Jorge J. Guadalupe, que estaba reinvestigando el caso.

(c) La reinvestigación del caso fue un proceso amplio y laborioso, anunciado públicamente, para el cual se pidió tiempo al tribunal de instancia y a este Tribunal. Este último entendió preliminarmente que la petición del Secretario de Justicia tenía suficientes méritos como para paralizar los procedimientos en instancia.

(d) Una vez concluida la reinvestigación, el Ministerio Público presentó nuevas denuncias para detener a la señora Echevarría Rodríguez por la muerte de su esposo y presentó cargos por perjurio contra Juan Orlando Sepúlveda en relación con uno de los cuales éste fue convicto mediante admisión de culpabilidad.

(e) El Pueblo se allanó a la Moción de Desestimación de 19 de diciembre de 1984 de la señora Echevarría Rodríguez.

(f) Aun cuando la señora Echevarría Rodríguez había presentado otra moción para desestimar bajo la Regla 247(b) de Procedimiento Criminal, *supra*, y había pretendido desistir de la moción de 19 de diciembre, el tribunal de instancia no había pasado juicio sobre tales asuntos cuando dictó sentencia el 20 de mayo de 1985, mediante la cual desestimó los cargos sin perjuicio.

(g) La señora Echevarría Rodríguez pretendió, sin éxito, revisar dicha sentencia mediante recurso de *certiorari* instado ante este Tribunal, el cual fue denegado el 31 de mayo de 1985.

(h) La sentencia dictada el 20 de mayo de 1985 advino final y firme mucho antes de la fecha en que se entabló el presente recurso apelativo, y se encuentra en pleno vigor.

Todo lo anterior *nos* lleva a examinar la sentencia antes aludida y sus antecedentes inmediatos. Veamos.

El 3 de mayo el tribunal de instancia celebró una vista en la cual el Ministerio Público y la defensa argumentaron sus respectivas posiciones en cuanto a la desestimación del caso. Durante el curso de la misma, el Ministerio Público presentó en corte abierta una nueva moción en la cual solicitaba que se desestimaran los cargos bajo las disposiciones de la Regla 64(p) de Procedimiento Criminal, *supra, presumiendo* que ese mismo día el tribunal había permitido a la acusada retirar su moción para desestimar de 19 de diciembre de 1984. El tribunal se sorprendió ante el hecho de que se expresara en esa nueva moción que había permitido el desistimiento del planteamiento contenido en la moción de 19 de diciembre e increpó por ello al Fiscal que lo presentó. Concluyó la vista después de conceder término a las partes para argumentar por escrito y, como hemos dicho, el 20 de mayo de 1985 dictó sentencia luego de analizar los procedimientos habidos hasta ese momento. En la sentencia, el tribunal:

(a) No se pronunció finalmente sobre el permiso solicitado por la acusada Echevarría Rodríguez para retirar su Moción de Desestimación de 19 de diciembre de 1984.

(b) Decidió que la desestimación sin perjuicio bajo la Regla 64(p) de Procedimiento Criminal, *supra*, es un remedio accesible tanto para el acusado como para el Ministerio Público.

(c) Decidió que "[t]ampoco sería justo que contemplemos el sobreseimiento bajo la Regla 247(b)". Caso Núm. O-85-346, Apéndice, pág. 21.

(d) Decidió que "[e]n consideración a los fundamentos vertidos en los párrafos que anteceden, ordenamos la desestimación del presente caso, sin perjuicio de que se contin[ú]e con el nuevo proceso". Caso Núm. O-85-346, Apéndice, págs. 21-22.

Esto es, que estando pendiente ante el tribunal una moción de la acusada bajo la Regla 64(p) de Procedimiento Criminal, *supra*, éste no otorgó el permiso solicitado para retirarla y decidió desestimar sin perjuicio, lo cual es perfectamente válido en derecho, especialmente cuando, además, los fundamentos aducidos en la moción bajo la citada Regla 247(b) son, como indicáramos antes, provistos únicamente bajo las disposiciones de la referida Regla 64(p). A la vez, tenía ante su consideración una moción de la acusada bajo la Regla 247(b) de Procedimiento Criminal, *supra*, la cual según hemos ya decidido anteriormente, "[p]or su esencia y propósito no estaba procesalmente disponible para ser invocada por el acusado . . .". *Pueblo v. Monge Sánchez*, 122 D.P.R. 590, 593 (1988).[8] Esta regla sólo puede ser activada por el tribunal a instancia propia o a petición del Fiscal, aunque "es susceptible de ser incorporada en el ánimo y conciencia del juez . . .". *Pueblo v. Monge Sánchez*, supra, pág. 593. En este caso, la defensa no la pudo incorporar al ánimo y a la conciencia de la juez, pues ésta expresamente la rechazó al dictaminar que "[t]ampoco sería justo que contemplemos el sobreseimiento bajo la Regla 247(b)". Caso Núm. O-85-346, pág. 21. Lo que sí podríamos afirmar es que la juez incorporó a su ánimo y conciencia que la desestimación solicitada procedía únicamente conforme con lo que dispone la Regla 64(p) de Procedimiento Criminal, *supra*.

---

[8] Opinión del Tribunal emitida por el Juez Asociado Señor Negrón García, con la cual estuvieron conformes los Jueces Asociados Señores Rebollo López, Ortiz y Alonso Alonso. Concurrieron el Juez Presidente Señor Pons Núñez y la Juez Asociada Señora Naveira de Rodón, y disintió el Juez Asociado Señor Hernández Denton.

De esa determinación es que, como ya hemos señalado, se recurrió ante este Tribunal mediante *certiorari*, dictaminándose el 31 de mayo de 1985 un no ha lugar al planteamiento.

Se pretende, en la opinión minoritaria, atacar en este procedimiento una sentencia final y firme emitida en otro procedimiento en el que se resuelve la misma cuestión entre las mismas partes. Para atacarla se recurre a lo que se reconoce como un planteamiento "indirecto" hecho por un apelante (López Watts) que no tiene fundamento jurídico para hacerlo y se traslada el mismo a la otra apelante (Lydia Echevarría Rodríguez) que pudo haberlo hecho pero que tampoco lo levanta directamente como error, pues ya lo había hecho antes en otro procedimiento mediante una moción que no le estaba disponible, y que le había sido denegada.

No podemos compartir ese curso decisorio y no acertamos a comprender por qué la minoría lo sigue ahora —mediante un proceso tan tortuoso— cuando pudo haberlo hecho antes directamente en los dos (2) casos en que el asunto se planteó ante este Tribunal, o sea, en los Recursos O-85-188 y O-85-346.

B. En la opinión disidente también se especula sobre la razón para que se emitieran los llamados "veredictos inconsistentes". La especulación, que no deja de ser eso, postula la posibilidad de que los llamados "veredictos inconsistentes" se produjeran por razón de la publicidad que recibió el caso.

Se nos ocurre que existen otras alternativas cuando de especulaciones se trata. Por ejemplo: que el veredicto absolutorio en cuanto a López Watts fue una señal de disgusto porque se le concedió inmunidad a Papo Newman y no al coacusado López Watts, cuya participación en los hechos fue muy similar a la de Newman. Pero todo no pasa de ser especulación y, como tal, no tiene cabida en el proceso decisorio jurídico. Como bien señaló el Tribunal Supremo de EE. UU.:

> We also reject, as imprudent and unworkable, a rule that would allow criminal defendants to challenge inconsistent verdicts on the ground that in their case the verdict was not the product of lenity,

but of some error that worked against them. Such an individualized assessment of the reason for the inconsistency would be based either on pure speculation, or would require inquiries into the jury's deliberations that courts generally will not undertake. Jurors, of course, take an oath to follow the law as charged, and they are expected to follow it. *United States v. Powell*, 469 U.S. 57, 66 (1984).

C. En cuanto al enjuiciamiento —sumamente duro— del Secretario de Justicia que se hace en la opinión disidente, nos parece improcedente, pues en gran medida se apoya también en especulaciones infundadas. No hemos percibido en sus actuaciones impropiedad que dé lugar al mismo. A esos efectos puntualizamos:

1. Cuando anunció públicamente el 22 de febrero de 1985 su reinvestigación, ya hacía por lo menos un (1) mes que se conocía públicamente que Juan Orlando Sepúlveda había mentido.

2. El llamado informe "Miranda", según se indica en una Resolución de 24 de septiembre de 1985 emitida en este caso por la Hon. Laura E. Nieves de Van Rhyn, que utilizó el Secretario de Justicia como fundamento para ordenar la reinvestigación, "consta de 49 páginas más dos páginas de un desglose de una lista de declaraciones juradas", *y no contenía prueba exculpatoria en relación con* los apelantes Echevarría Rodríguez y López Watts.

3. Según se desprende de las mociones de 4 y 14 de marzo de 1985, que se han unido a ésta como *Addendums* A y A-1, la reinvestigación fue anunciada públicamente, fue sumamente amplia y detallada, y obviamente como resultado de ella es que se pudo llevar adelante este procedimiento y encausar exitosamente a Juan Orlando Sepúlveda por perjurio.

4. A nuestro entender, el Secretario de Justicia, Hon. Héctor Rivera Cruz, habiendo advenido en conocimiento del testimonio perjuro del ciudadano Sepúlveda y de que, como lo resuelve la Hon. Juez Nieves de Van Rhyn, no había prueba exculpatoria de la apelante Echevarría Rodríguez, *tenía el deber* de reinvestigar la situación y proceder, si así lo indicaba la reinvestigación, a formular los cargos o las acusaciones que fueren menester.

## IV

Una última reflexión. Cuando de justicia se trata, debemos siempre recordar que además de garantizar a los acusados los derechos inalienables que les confiere nuestro ordenamiento constitucional y jurídico, tenemos también el deber de proteger a la sociedad y a sus integrantes que puedan ser víctimas de la conducta antisocial. Para cumplir con ese deber, debemos examinar desapasionadamente los hechos propiamente traídos a nuestra consideración y juzgar teniendo en mente todos los intereses involucrados: los individuales y los colectivos. Después de todo, no podemos olvidar que nuestro ordenamiento tiene como fundamento teórico un contrato social en que todos somos hombres libres y que, para permanecer como tales, es indispensable establecer un balance que no sólo garantice la libertad individual, sino también la protección colectiva que impide al hombre entrar en sociedad y que la legitima.

En este caso en particular, no abrigamos duda de que a base de un análisis severo y desapasionado de toda la prueba y legajo del caso, y más allá de todo legalismo, las sentencias dictadas están plenamente justificadas.

*Se dicta resolución de conformidad.*

*ADDENDUM A*

EN EL TRIBUNAL SUPERIOR DE PUERTO RICO
SALA DE SAN JUAN

| | | |
|---|---|---|
| EL PUEBLO DE PUERTO RICO | * * | |
| | | CRIMINAL NUM: C84-3149 y otros |
| vs | * | POR: |
| LYDIA ECHEVARRIA RODRIGUEZ y otras | * | ASESINATO EN PRIMER GRADO |
| | * * | Y OTROS |
| Acusados | * | |

_ _ _ _ _ _ _ _ _

COMPARECENCIA DEL SECRETARIO DE JUSTICIA Y DEL MINISTERIO PUBLICO OPONIENDOSE A LA DESESTIMACION A BASE DE SUS EXPRESIONES Y REITERANDO SU SOLICITUD PARA LA SUSPENSION Y PARALIZACION DE LOS PROCEDIMIENTOS EN ESTE CASO

AL HONORABLE TRIBUNAL:

Comparece el Secretario de Justicia y el Ministerio Público a través del Fiscal que suscribe y muy respectuosamente alega y solicita:

1. El 25 de febrero de 1985 el Honorable Tibunal le ordenó a los comparecientes mostrar causa por lo cual: (1) no deban desestimarse los cargos en el presente caso, a base de las expresiones públicas hechas por el Secretario de Justicia, los cuales, expresó el Honorable Tribunal, "tienden a demostrar que el caso está en condiciones de absoluto deterioro"; (2) el récord del día 25 de febrero no sea elevado al Tribunal Supremo para que dicho Honorable Tribunal evalúe la conducta profesional del

Secretario de Justicia en consideración a los cánones de ética, especialmente el Cánon 13; y (3) si el reclamo de los noventa (90) días puede ser meritorio o no en las circunstancias actuales en que se encuentra este caso.

2. Respetuosamente sometemos que a la luz de los hechos y del derecho aplicable no procede la desestimación de los cargos. Procedemos a exponer los hechos y los argumentos pertinentes a cada uno de los punto planteados por este Honorable Tribunal.

I. Los hechos pertinentes a este incidente son los siguientes:

1. El 22 de febrero de 1985, el Secretario de Justicia anunció que había ordenado una reinvestigación del caso del asesinato de Luis Vigoreaux porque estaba insatisfecho con la calidad de la investigación que llevó a cabo su Departamento y que motivó la prematura radicación de los cargos ante el Honorable Tribunal. Véase, Comunicado de Prensa que obra en autos. Exhibit A, infra.

2. Indicó el Secretario que había ordenado la reinvestigación a la luz de un informe que le rindió el Subsecretario de Justicia, César R. Miranda, evaluando la investigación realizada.

3. A tenor con su determinación, el Secretario de Justicia designó a Luis R. Román, un fiscal con 17 años de experiencia, para que efectuara dicha reinvestigación y continuara con los trámites del caso ante los tribunales. Con esta designación, se relevó del caso a los fiscales Melba Ramos y Guillermo Gil, para que el nuevo fiscal pudiera escoger libremente su equipo de trabajo.

4. Dada las deficiencias determinadas en la evaluación de la investigación previa, las cuales podrían dar margen a una evaluación de la responsabilidad profesional de los que tomaron las decisiones en el caso en el pasado, el Secretario indicó que le ordenaría al Procurador General que evaluara la conducta de dichos abogados y además ordenaría una investigación administrativa dentro de su Departamento para determinar si alguien no actuó correctamente.

5. Actuando en consonancia con lo anterior, el Fiscal recién designado, aquí suscribiente, presentó ante el Honorable Tribunal una Moción Solicitando Suspensión. Véase Exhibit B.

6. El 25 de febrero de 1985 el Ministerio Fiscal compareció a la vista previamente señalada para el inicio del juicio, en cuya vista el Honorable Tribunal dictó la resolución que da base a esta comparecencia.

II. A la luz de los hechos anteriormente expuestos, difícilmente puede concluirse que proceda la desestimación de los cargos porque el caso está en condiciones de absoluto deterioro

1. En primer lugar, respetuosamente señalamos que el criterio de "absoluto deterioro" como fundamento para la desestimación es novel, por no decir novedoso, y nunca se ha reconocido en nuestro ordenamiento jurídico. Hasta donde hemos podido investigar, ni en Puerto Rico ni en ninguna otra jurisdicción se ha utilizado tal fundamento para desestimar los cargos criminales en un caso.

2. Igualmente debemos señalar que nada de lo expresado por el Secretario de Justicia en forma alguna se refirió al estado actual del caso. Antes bien, todas sus expresiones públicas se han referido a la conducta pasada de funcionarios de su Departamento al efectuar la investigación que culminó en la presentación de los cargos.

Referimos, muy respetuosamente, al Honorable Tribunal al último párrafo del comunicado de prensa en que el Secretario claramente se abstiene de comentar sobre cualquier otro particular del caso más allá de la conducta de los funcionarios del Ministerio Público durante la investigación, a saber:

"Lamento no poder darle información adicional alguna sobre este asunto, pues hay trámites pendientes en los tribunales que me obligan a tomar esta decisión."

3. La suspensión solicitada por el Ministerio Público así como la reinvestigación ordenada por el Secretario de Justicia, lejos de deteriorar el caso, están encaminadas a fortalecerlo para lograr

los fines de hacer justicia. Así lo han indicado las expresiones públicas del Secretario en todo momento.

4. Cabe señalar finalmente, que tampoco puede concluirse que las expresiones del Secretario hayan lesionado en forma alguna los derechos de los acusados. De hecho, en ningún momento los acusados en este caso han objetado a dichas expresiones o han alegado perjuicio alguno como consecuencia de las mismas.

III. No existe fundamento alguno en derecho para elevar al Honorable Tribunal Supremo la consignacion de las expresiones del Secretario de Justicia

1. Aunque entendemos que no existe fundamento alguno en derecho para elevar al Honorable Tribunal Supremo la consideración de las expresiones del Secretario de Justicia, no tenemos objeción alguna a que así se haga, toda vez que la tutela ética del abogado es de la exclusiva jurisdicción del Honorable Tribunal Supremo, la cual dicha Honorable Superioridad no la comparte con funcionarios ni organismo alguno. In re Alvarez Crespo, 110 DPR 624 (1981). Por ende, este Honorable Tribunal carece de toda jurisdicción para tomar determinación alguna y mucho menos para evaluar la conducta del Secretario de Justicia a la luz de los cánones de ética, que no sea referir el caso al Honorable Tribunal Supremo.

2. No obstante, entendemos que tal referencia sería improcedente en derecho toda vez que las expresiones vertidas por el Secretario de Justicia en torno al funcionamiento de su Departamento, de la conducta de sus funcionarios y de la asignación de tareas a los distintos fiscales no pueden calificarse como la publicación de "detalles u opiniones sobre casos criminales pendientes", que es la conducta prohibida por el Cánon 13.

3. Tampoco, existe evidencia para concluir que la publicación de las expresiones pueda obstaculizar la celebración de un juicio imparcial o que sean perjudiciales a la debida administración de la justicia.

4. Lejos de ello, tanto las expresiones del Secretario como la reinvestigación ordenada están encaminadas a fortalecer la admi-

nistración de la justicia y velar porque esta se haga. De manera que no existe fundamento alguno, ni de hecho ni de derecho, para concluir que se ha incurrido en una violación de los cánones de ética.

5. En este contexto, es preciso señalar que es al Secretario de Justicia a quien le compete administrar el Departamento de Justicia, supervisar la función de los fiscales y designarle sus tareas. 3 LPRA secs. 95 y 98. Las expresiones vertidas por el Secretario de Justicia y la designación del Fiscal Luis A. Román se hicieron a tenor con dicha autoridad y en nada infringen o confligen con el ejercicio del poder judicial por este Honorable Tribunal.

6. Es igualmente preciso señalar que en el descargo responsable de sus funciones, el Secretario de Justicia debe informarle al Pueblo, cuando así lo crea oportuno, sobre las medidas necesarias que está tomando para salvaguardar la institución de la justicia en Puerto Rico. Tal información, lejos de violar los cánones de ética, es cónsona con éstos, toda vez que, siendo el Secretario de Justicia, el abogado del Pueblo de Puerto Rico, tiene un deber de mantenerlo informado sobre los asuntos que afectan la administración de la justicia. Véanse, Cánones 5 y 19.

7. Finalmente, en relación a los cánones de ética, debemos señalar que en otras jurisdicciones también se ha reconocido la necesidad de que inclusive el fiscal de un caso, informe al público sobre su conducta. Véase, e.g., Bell v. Gray, 712 F 2d 490 (D.C. Cir. 1983).

IV. A la luz de los hechos la Solicitud pa[r]a la suspensión y paralización de todos los procedimientos en este caso por noventa (90) días está justificada

1. Las circunstancias extraordinarias expuestas en la relación de los hechos pertinentes a este caso constituyen la razón principal que nos lleva a solicitar la suspensión y paralización de todos los procedimientos en este caso por 90 días. La necesidad y conveniencia de reinvestigar el presente caso a fin de salvaguardar la institución de la justicia en Puerto Rico y los derechos de los

ciudadanos tanto como las de los propios acusados en este caso constituye causa justificada para la suspensión y paralización de los procedimientos en el mismo.

2. Obligar al Ministerio Público a entrar a juicio cuando no está totalmente preparado para hacerlo y habiéndose iniciado una reinvestigación de este caso, sería altamente injusto y perjudicial a los intereses del Pueblo de Puerto Rico, así como lesivo al proceso de hacer justicia por los tribunales de nuestro país. Ello es particularmente así, en vista de que tal suspensión no perjudica en forma alguna los derechos de los acusados y sí contribuiría a salvaguardar la credibilidad de los tribunales como instituciones para impartir justicia.

POR TODO LO CUAL, muy respetuosamente se solicita de este Honorable Tribunal que declare con lugar la solicitud del Ministerio Público para la suspensión y paralización de todos los procedimientos en este caso por un término de noventa (90) días.

En San Juan, Puerto Rico, hoy 27 de febrero de 1985.

Respetuosamente sometido.

CERTIFICO: Que copia fiel y exacta de esta moción está siendo remitida en esta fecha a los abogados de los acusados: Lcdo. Yamil Galib Frangie, Apartado 736, San Germán, P.R.; Lcdo. Wilfredo Figueroa Vélez, Condominio The Executive, Suite 503, Ave. Ponce de León 623, Hato Rey, PR; Lcdo. Elí B. Arroyo, Pan Am Building, Hato Rey, PR; Lcdo. Fernando Carlo, Edificio Midtown, Oficina 902, Hato Rey, PR y Lcdo. Eugenio Ramos, Popular Center 1912, Hato Rey, Puerto Rico.

[*Fdo.*] LUIS A. ROMÁN
Fiscal
Departamento de Justicia
Miramar, Santurce, PR

# EXHIBIT A

*ESTADO LIBRE ASOCIADO DE PUERTO RICO*

## OFICINA DEL SECRETARIO DE JUSTICIA

*APARTADO 192 SAN JUAN, PUERTO RICO 00902*

## CP-85-16

## 22 de febrero de 1985

## COMUNICADO DE PRENSA

El Secretario de Justicia, Héctor Rivera Cruz, anunció hoy que ha ordenado una reinvestigacion en el caso del asesinato de Luis Vigoreaux, designando para ello al fiscal Luis A. Román, quien además, continuará con los trámites del caso ante los tribunales. Con esta decisión se ha relevado de este caso a los fiscales Melba Ramos y Guillermo Gil, para que el nuevo fiscal pueda escoger libremente su equipo de trabajo.

Durante Conferencia de Prensa celebrada en sus Oficinas, Rivera Cruz dijo estar insatisfecho con la calidad de la investigación que se llevó a cabo y que motivó la prematura radicación de los cargos ante el Tribunal, calificándola de "deficiente y fragmentada". "Esa investigación que se practicó no me puede satisfacer porque demuestra que no se cumplieron con todos los criterios de profesionalismo y de competencia profesional que exijo que se observen por todos los fiscales en Puerto Rico al investigar los casos".

Dijo haber llegado a esta conclusión luego de considerar el informe confidencial de 49 páginas que le rindió el subsecretario, César R. Miranda, informe que evaluó la investigación realizada desde que se produjo la muerte del conocido animador y productor de la televisión puertorriqueña, hasta ahora. Alrededor de diez fiscales habían participado en la pesquisa de este caso antes de radicarlo y la mayoría de ellos sostenían que el caso no se debió radicar, porque la investigación estaba incompleta.

"Estimo que se precipitó la radicación de los cargos y se quedaron sin examinar una serie de ángulos esenciales, lo que puede dar margen a una evaluación de la responsabilidad profesional de los que tomaron esa determinación, incluyendo al ex-secretario de Justicia, Nelson Martínez Acosta".

"Yo no voy a permitir que fracase la justicia en este país; si alguien actuó indebidamente, sea fiscal o el propio licenciado Martínez Acosta, deben asumir la responsabilidad de sus actos. Voy a ordenar al Procurador General que me evalúe la conducta de los abogados del Departamento que participaron en este caso y además, ordenaré otra investigación de naturaleza administrativa para asegurarme que si alguien no actuó correctamente, se le responsabilice por ello".

Debido a toda esta situación, me fue menester tomar las medidas necesarias para cumplir con mi responsabilidad primordial que es salvaguardar la institución de la justicia en Puerto Rico y los derechos de los ciudadanos y aún de los propios imputados.

A esos efectos, he designado a Luis A. Román, un fiscal con 17 años de experiencia, para que se continúen los trámites investigativos por una persona que no ha tenido contacto previo alguno con este caso", señaló Rivera Cruz.

El nuevo fiscal se ha movido a San Juan desde Aguadilla, donde se desempeñaba como Fiscal en Jefe y se le ha asignado personal del Negociado de Investigaciones Especiales para que lo asista.

Román investigará aquellos ángulos del caso que considere esenciales y determinará los pasos a seguir en los trámites judiciales que estén pendientes en los tribunales, en consulta con el Secretario. Responderá únicamente a éste, le comunicará el producto de su investigación y consultará con él cualquier decisión a tomar.

Lamento no poder darle información adicional alguna sobre este asunto, pues hay trámites pendientes en los tribunales que me obligan a tomar esta decisión".

*ADDENDUM A-1*

EN EL TRIBUNAL SUPERIOR DE PUERTO RICO
SALA DE SAN JUAN

EL PUEBLO DE PUERTO   *
RICO   *
   Vs.   *   CRIMINAL NUM.:
         G84-3149 al
         G84-3166

LYDIA ECHEVARRIA   *
RODRIGUEZ y OTROS    SOBRE:   Asesinato en
      *   Primer Grado y otros

   Acusados
      *

___ ___ ___ ___ ___ ___ ___ ___

## MOCION REITERANDO SOLICITUD DE SUSPENSION Y PARALIZACION

AL HONORABLE TRIBUNAL:

COMPARECE el Ministerio Público a través del Fiscal que suscribe y muy respetuosamente expone los siguientes fundamentos sobre su moción solicitando la suspensión y paralización de todos los procedimientos en este caso por un período de noventa (90) días:

1. El 1ro de marzo de 1985 el Honorable Tribunal celebró una vista para considerar, entre otras cosas, la solicitud del Ministerio Público de suspender y paralizar todos los procedimientos en este caso con el fin de permitirle al Fiscal que suscribe, quien había sido recien asignado al caso, iniciar una reinvestigación del mismo. Como consecuencia de dicha vista, el Honorable Tribunal ordenó una suspensión del caso hasta el 1ro de abril de 1985, para cuya fecha citó a una vista para la discusión de varios escritos relacionados con las diversas mociones presentadas por las partes en este caso.

No obstante, el Honorable Tribunal le ordenó al Ministerio Público contestar varias de las mociones y le ordenó someter un

informe interno realizado por el Sub-secretario de Justicia. Las órdenes dictadas por el Tribunal tienen plazos de diez (10) a veinte (20) días para cumplimentar lo ordenado.

2. El Fiscal compareciente ha tenido la oportunidad de iniciar la reinvestigación del presente caso y comenzar a familiarizarse con algunos de los detalles de la complejidad que el mismo encierra. También se ha podido percatar que es sumamente oneroso en la presente situación cumplir responsablemente con las diversas órdenes pendientes en el caso mientras que simultáneamente se lleva a cabo una exhaustiva reinvestigación. A la luz de estos hechos, la única forma de cumplir a cabalidad ambas tareas es mediante la paralización de todos los procedimientos con el fin de permitir que se concluya la reinvestigación del caso.

Los acontecimientos que han salido a la luz pública relacionados con la forma y manera en que se ha desarrollado el presente caso, así como el análisis interno que del mismo ha hecho al presente el Departamento de Justicia, requieren que se reinvestiguen una serie de ángulos a los fines de tomar las determinaciones correspondientes con el objetivo de salvaguardar la institución de la justicia en Puerto Rico y el derecho de los ciudadanos de que se haga justicia.

Esta reinvestigación requiere que se examine, investigue y re-evalue el presente caso que tiene las siguientes particularidades:

a. El número de testigos a ser entrevistados es muy alto. Por ejemplo, hasta la fecha en este caso han participado 62 agentes y hasta 11 fiscales en las diferentes etapas, de los cuales, habría que entrevistar a muchos de ellos.

b. Las piezas de evidencia disponibles deben ser sometidas a análisis más extensos y sofisticados. En muchas ocasiones los resultados de los distintos tipos de prueba tardan aproximadamente 3 semanas en obtenerse.

c. Una vez hechos los análisis y las pruebas referidas en el apartado anterior, se plantea la posibilidad de tener que consultar la opinión de varios peritos tanto en Puerto Rico como en el extranjero.

d. Se requiere, además, que se revisen todas las declaraciones juradas y transcripciones de las diferentes vistas celebradas hasta la fecha.

e. La reinvestigación también requiere la reconstrucción de las escenas del crimen y entrevistas de posibles nuevos testigos, así como la localización de evidencia material.

3. Para poder realizar las gestiones investigativas antes expresadas y analizar y reevaluar toda la prueba del caso, es imperioso disponer de un período de tiempo razonable y que esté en armonía con la magnitud de la tarea que hay que realizar y los méritos del caso. Luego de estructurar el plan del trabajo que se debe hacer en el presente caso y en base a la experiencia que tiene el Ministerio Público en la realización de las funciones investigativas, el Fiscal suscribiente está convencido que el plazo que necesita debe ser no menor de noventa (90) días.

4. Difícilmente podría el Fiscal continuar con sus labores de investigación si a cada momento tiene que dedicarle todo su tiempo a contestar las diversas mociones pendientes, preparar alegatos y asistir a vistas. Estas tareas no solamente retrasan innecesariamente la investigación, sino que exigen que se dedique tiempo a tareas que podrían resultar académicas o inútiles para todas las partes envueltas en este caso una vez finalice la reinvestigación iniciada.

5. En un proceso criminal la meta, tanto para el fiscal como para el abogado defensor, debe ser siempre el esclarecimiento de la verdad y el deseo genuino de que se haga la mejor justicia de que nosotros los seres humanos somos capaces. Pueblo de Puerto Rico v. Candy Arreche Holdum, 83 JTS 34.

La designación de un nuevo fiscal para reinvestigar este caso y conducir el mismo en representación del Ministerio Público, lejos de ser mecanismos para dilatar los procedimientos, constituyen el cumplimiento de las responsabilidades impuestas al Ministerio Público por los Cánones de Etica Profesional. El Canón 5 es taxativo al señalar que "es el deber primordial . . . del fiscal procurar que se haga justicia". Esa es la única pretensión que tenemos en este caso, que se nos permita conducir la

reinvestigación en forma ordenada y responsable para procurar que se haga justicia.

Aún el derecho a juicio rápido se adapta en ocasiones al programa de trabajo y a las realidades prácticas del funcionamiento del sistema de administración de Justicia. Hernández Pacheco v. Flores Rodríguez, 105 D.P.R. 173 (1976). Como señaló el Honorable Tribunal Supremo en ese caso: "tanto los derechos del acusado, como los de la sociedad interesada en juzgarlo, no son prisioneros de la tiesa aritmética de la regla. Hay elementos de justa causa para la demora que reconcilian el derecho a juicio rápido con las circunstancias reales de cada caso y los derechos del acusado, y han de atemperarse a la administración práctica de la justicia."

POR TODO LO CUAL, muy respetuosamente se solicita de este Honorable Tribunal que declare con lugar la solicitud del Ministerio Público para la suspensión y paralización de todos los procedimientos en este caso por un término de noventa (90) días, incluyendo el que se nos releve de contestar las mociones y cumplir con las órdenes dictadas el 1 de marzo de 1984. A los fines de poder dedicarle todos nuestros esfuerzos a la tarea reinvestigativa que estamos llevando a cabo y poder culminar la misma dentro del término que el Ministerio Público ha solicitado, se le suplica al Tribunal que resuelva la presente moción a los fines de poder tener un marco de certeza para cumplir con nuestra encomienda.

En San Juan, Puerto Rico, hoy de marzo de 1985.

CERTIFICO: Que copia fiel y exacta de esta moción está siendo remitida en este fecha a los abogados de los acusados: Lic. Yamil Galib Frangie, Apartado 736, San Germán, P.R.; Lic. Wilfredo Figueroa Vélez, Condominio The Executive, Suite 503, Ave. Ponce de León 623, Hato Rey, P.R.; Lic. Fernando Carlo,

Edificio Midtown, Oficina 902, Hato Rey, P.R.; Lic. Eugenio Ramos, Popular Center 1912, Hato Rey, P.R.

[*Fdo.*] LUIS A. ROMÁN
Fiscal
Departamento de Justicia
Miramar, Santurce, PR

—O—

Opinión concurrente del Juez Asociado Señor Negrón García.

La carencia de méritos en los reclamos de inocencia y en los planteamientos jurídicos formulados por los apelantes Lydia Echevarría Rodríguez y David López Watts, en reconsideración, nos recuerdan los versos de Gustavo Adolfo Bécquer: *Dios mío, qué solos se quedan los muertos*!

Los pronunciamientos adicionales del Tribunal al proveer no ha lugar —conjuntamente con los términos del vigoroso disenso del Juez Asociado Señor Rebollo López— nos mueven a exteriorizar una *síntesis* del proceso integral racional y reflexivo íntimo que ha servido de nutrimento a nuestra conciencia judicial.

*Separadamente* examinamos la abundante evidencia documental y testifical presentada por el Ministerio Fiscal; de igual modo la aportada por la defensa. Dedicamos días enteros a la lectura crítica de *toda la transcripción de evidencia*. Esa tarea nos ha permitido, sin margen de error, concluir que se demostró más allá de duda razonable la culpabilidad de los apelantes Echevarría Rodríguez y López Watts. En este sentido, fácticamente los veredictos de los miembros del Jurado fueron correctos. Ante ellos expusieron sus teorías el Ministerio Fiscal y los abogados de la defensa. El tribunal de instancia y el Jurado tuvieron el beneficio de escuchar y ponderar todos los planteamientos de nulidad y abuso gubernamental esgrimidos por la apelante Echevarría Rodríguez y lo relativo al archivo de su primer encauzamiento bajo la Regla 64(p) de Procedimiento Criminal, 34 L.P.R.A. Ap. II, según el elaborado y razonado dictamen de 20 de mayo de 1985 de la Juez Superior, Hon. Ygrí Rivera de Martínez, G-84-3149 y otros, *Pueblo v. Lydia Echevarría Rodríguez, Jorge J. Guadalupe Núñez y Rubén Guadalupe Núñez.*

El trámite que culminó en ese archivo lo inició propiamente la acusada Echevarría Rodríguez el 19 de diciembre de 1984. Fue ella quien solicitó la *desestimación* a la luz de la citada Regla 64(p) de Procedimiento Criminal; después, con el propósito de impedir

un nuevo proceso, el 19 de febrero de 1985 invocó erróneamente la Regla 247(b) de Procedimiento Criminal, 34 L.P.R.A. Ap. II.

Desde el primer momento fundó su pedido en la ausencia de una determinación válida de causa probable para acusarla. El único vehículo procesal que tenía a su haber era la Regla 64 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, pues por su naturaleza inherente, una moción de desestimación sólo está disponible a un acusado. *Pueblo v. Tribunal Superior*, 94 D.P.R. 59 (1967). Demostrados los hechos en que se funda procede, por imperativo, como cuestión de derecho. Se trata de una situación en que la latitud discrecional del Tribunal se reduce al mínimo.

Si bien el Ministerio Fiscal originalmente se opuso, subsiguientemente —después de múltiples mociones— se allanó e incluso pidió, *sin poderlo hacer*, la desestimación bajo la misma Regla 64(p) de Procedimiento Criminal, *supra*. Al otro día, 19 de abril de 1985, la apelante desistió de su moción para desestimar fundamentada en la citada Regla 64(p). Reiteró la Regla 247(b) de Procedimiento Criminal, *supra*.

Conforme resolvimos en *Pueblo v. Monge Sánchez*, 122 D.P.R. 590, 593 (1988), la citada Regla 247(b) únicamente puede "ser activada por el tribunal a 'instancia propia, o *a petición del fiscal* . . .'". (Énfasis suplido.) Se trata de situaciones donde se apela eminentemente a la sana discreción del tribunal, única fuente generadora del decreto judicial.

Aquí, aunque con vaivenes, la defensa y el Ministerio Fiscal trataron de obtener la mayor ventaja procesal. Sin embargo, a fin de cuentas hubo un denominador común subyacente: la ausencia de prueba válida para determinar causa probable por razón del testimonio perjuro de Sepúlveda Berríos ("Bronco"). La Juez Rivera de Martínez no podía ignorar esta realidad. De haber actuado bajo la citada Regla 247(b), el sobreseimiento hubiese sido "en pro de una injusticia": el crimen de Vigoreaux hubiese quedado impune. En lo pertinente, reproducimos su ilustrado y correcto razonamiento:

Consideramos que cualquier otra interpretación daría al traste con el principio enunciativo de que tanto las leyes como las Reglas

y las normas jurídicas deberán interpretarse razonablemente, *asegurando que tal interpretación no lleve a resultados absurdos, de modo que aseguren la tramitación más justa y económica de todo procedimiento.*

Estamos ante una situación en que el fiscal alega tener nueva prueba para sostener los cargos que se le imputan a la señora acusada, y a tales efectos, ya se inició un nuevo proceso que se encuentra en la etapa de Vista Preliminar ante el Tribunal de Distrito. Por otra parte, el remedio *solicitado* por la defensa consiste en que el Tribunal permita que se concluya el descubrimiento de prueba en el caso, para poder estar en posición de determinar qué es lo que con arreglo a los mejores fines de la justicia debe proceder en el caso, y/o en la alternativa, que se archive bajo las disposiciones de la Regla 247 (b) en pro de la justicia. Aunque la súplica de la defensa *pueda ser una alternativa*, consideramos, *no sería la más correcta*, ateniéndonos al preeminente criterio relativo al balance justiciero que debe prevalecer entre los derechos de los acusados, y los de la justicia pública, así como a las normas generales que imponen el deber a los tribunales de buscar soluciones justas, rápidas y económicas.

La acusada, en lo que respecta al nuevo proceso, estará protegida, por la presunción de inocencia, garantía constitucional que consagra ese derecho de un modo comparable con lo sagrado, y tendrá, además, derecho a un juicio rápido, justo, público e imparcial.

Le asiste, en adición, el derecho a carearse con los testigos de cargo, a obtener la comparecencia compulsoria de testigos a su favor y a tener asistencia de abogado en todas las etapas del proceso.

Tendrá derecho, a que su juicio, si es que el caso llega a esta etapa, habida cuenta de que aún está pendiente de Vista Preliminar, se ventile ante un jurado imparcial, compuesto por doce (12) vecinos del Distrito Judicial de San Juan, seleccionados mediante un proceso que se conoce como desinsaculación del jurado en el cual podrán participar activamente sus abogados, pudiendo recusar a todos los jurados que no cualifiquen como tales. Para que el jurado pueda rendir un veredicto válido tiene que ser por mayoría de nueve (9) de las doce (12) personas que lo componen, y es al fiscal, a quien le corresponde probar la culpabilidad de la acusada, más allá de duda razonable, prevaleciendo la misma situación si el caso se ventilare por tribunal de derecho, debiendo rendir el jurado o el juez un veredicto o fallo absolutorio, si el Ministerio Público no prueba la culpabilidad más allá de duda razonable.

Estos son únicamente parte de los derechos que el Tribunal tiene la obligación de protegerle a la acusada, y no tenemos dudas de que así se hará en cualquiera de las etapas del nuevo proceso.

En adición, los reclamos que la defensa ha hecho en el presente caso, podrá si así lo estima apropiado en derecho, reproducirlos nuevamente ante el juzgador que presida el nuevo proceso.

Ante tales circunstancias, no sería razonable permitir la continuación de los procedimientos en el presente caso, lo cual significaría mantener paralizada indefinidamente la Vista Preliminar que está pendiente, algo perjudicial para ambas partes, defensa y fiscal.

Tampoco sería justo que contemplemos el sobreseimiento bajo la Regla 247(b). De optar el Tribunal por tomar tal determinación, el fiscal estaría impedido de continuar con el proceso ya comenzado, proceso, que habrá de garantizar los derechos de la acusada, así como los del Pueblo de Puerto Rico, representado por el Ministerio Público, quien, después de todo es el que tiene el peso de probar la culpabilidad de la acusada, más allá de duda razonable, teniendo todos la obligación de presumirla inocente de todos los cargos que se le imputan, ahora, y durante todo el proceso, e inclusive durante la deliberación, y hasta que se rinda el veredicto por el jurado, o se emita el fallo por el Juez.

Dicha presunción de inocencia es parte de lo que constituye la base fundamental de nuestro sistema democrático, y ningún ciudadano en esta Isla podrá realizar actos conducentes a afectar tal derecho, sin que con ello quede socavada la base misma de la sociedad, los derechos humanos, las fuentes del derecho natural y la vida de la comunidad puertorriqueña.

En consideración a los fundamentos vertidos en los párrafos que anteceden, ordenamos la desestimación del presente caso, sin perjuicio de que se contin[ú]e con el nuevo proceso. (Énfasis suplido y escolios omitidos.) Caso Núm. O-85-346, Apéndice, págs. 19–22.

## II

La teoría del Ministerio Fiscal —en términos de móvil, autores, secuencia cronológica, espacio y modus operandi— fue probada hasta la saciedad. Como verdad forense, estableció la culpabilidad de los apelantes Echevarría Rodríguez y López Watts. Múltiples detalles, piezas y objetos —como un rompecabezas evidenciario— encajaron armoniosamente. Innumerables

testigos no contradichos avalaron el testimonio del principal testigo, el coautor Francisco (Papo) Newman.

El Jurado fue desinsaculado y seleccionado despúes de varios días y vistas. Estuvieron sometidos al rigor de las preguntas del Ministerio Fiscal y de la defensa. No hay el más mínimo indicio que ponga en entredicho la validez y el alcance del *voir dire* y tampoco la idoneidad de los miembros finalmente escogidos. Como medida cautelar, el tribunal de instancia ordenó su secuestro desde el 16 de febrero de 1986, cuando se inició el desfile de la prueba. *Pueblo v. Hernández Mercado*, 126 D.P.R. 427 (1990). Así aislado, sólo estuvo expuesto a la prueba desfilada dentro del recinto del tribunal. La excesiva publicidad antes y durante el proceso, relacionada con este trágico suceso —inevitable por la condición de figuras de la farándula de la protagonista Echevarría Rodríguez y el occiso Vigoreaux— lo mismo que las intervenciones públicas más allá de lo normal de altos funcionarios del Departamento de Justicia, no desvirtúan la solidez y suficiencia de la prueba de cargo.

Desde este estrado apelativo, los demás argumentos son puras conjeturas que en nada contradicen la contundente prueba desfilada y los veredictos.

—O—

Opinión disidente emitida, en etapa de reconsideración, por el Juez Asociado Señor Rebollo López.

"La capacidad del hombre para la justicia hace la democracia posible, *pero la inclinación del hombre por la injusticia hace la democracia necesaria.*" (Traducción nuestra.)[1]

La *fe de la ciudadanía* en el sistema de justicia que impera en un *país democrático* como el nuestro resulta ser *imprescindible* para el *bienestar general* del mismo. *Dicho sistema necesaria-*

[1] R. Niebuhr, *The Children of Light and The Children of Darkness*, 1944, citado en J. Bartlett, *Familiar Quotations: A Collection of Passages, Phrases and Proverbs Traced to their Sources in Ancient and Modern Literature*, 13ra ed. rev., Boston, Ed. Little, Brown and Co., 1956, pág. 963b.

*mente tiene que estar cimentado sobre principios de decencia y buena fe. Velilla v. Pueblo Supermarkets, Inc.,* 111 D.P.R. 585 (1981). De ello no ser así, el resultado inevitable *lo es la injusticia.*

Cuando, desafortunadamente, el Estado actúa con total abstracción de dichos principios, *o cuando existe fundada duda sobre si así ha actuado,* este Tribunal, como *celoso guardián* de los derechos constitucionales de nuestros ciudadanos, *tiene que estar siempre presto y decidido a repudiar cualquier actuación oficial que adolezca de esa falla.*

La *omisión* de este Tribunal de *rechazar y condenar la actuación del Estado* en el presente caso lo ha llevado a la confirmación de las sentencias apeladas; la consecuencia de la cual lamentablemente resulta ser *la comisión de una injusticia contra los apelantes Lydia Echevarría Rodríguez y David López Watts.*

I

El pasado 25 de abril de 1991, al solitariamente disentir de la opinión que emitiera una mayoría absoluta de los integrantes del Tribunal en el presente caso, expresamos:

La muerte de uno de nuestros conciudadanos, ocurrida como consecuencia de la comisión de unos hechos delictivos, en adición a un profundo sentimiento de pena y coraje, causa en los demás ciudadanos sentimientos de frustración y de responsabilidad; *lo anterior, no hay duda, debido a que la contínua repetición de hechos delictivos significa que el sistema de gobierno bajo el cual convivimos no está funcionando adecuada y correctamente.* Cuando la víctima de esos hechos delictivos ha sido nuestro amigo, dichos sentimientos se acrecientan. Es por ello que la muerte del Sr. Luis Vigoreaux, Q.E.P.D., produjo en nuestra ciudadanía emociones y sentimientos tan fuertes. A través de la radio y la televisión el señor Vigoreaux, quien dedicó su vida a entretener y alegrar la existencia de los demás, se convirtió en parte integral de la vida de todos los ciudadanos de este País. Su muerte, sin duda, constituyó para la ciudadanía el deceso de un amigo.

Ello no obstante, no podemos brindarle nuestra conformidad a la opinión que en el día de hoy emite una mayoría de los integrantes

del Tribunal en los casos de epígrafe; Opinión mayoritaria mediante la cual este Tribunal confirma las convicciones y sentencias que se decretaron e impusieron, en el Tribunal Superior de Puerto Rico, Sala de San Juan, a los apelantes Lydia Echevarría Rodríguez y David López Watts. *Si trágica y sentida fue la muerte del señor Vigoreaux, desafortunada en extremo fue la conducta observada por el Estado en la investigación y el procesamiento de los alegados responsables del mencionado y vicioso hecho delictivo,* conducta del Estado que culminó en las convicciones y sentencias que hoy están ante nuestra consideración; *convicciones y sentencias que, en el caso particular de la apelante Lydia Echevarría, resultan ser inclusive nulas.*

## I

Bajo nuestro sistema republicano de gobierno, la Rama Ejecutiva tiene la obligación constitucional de poner en vigor y de velar por que se cumplan —a través de su Departamento de Justicia— las leyes que aprueba la Rama Legislativa. La tercera rama de gobierno, la Rama Judicial, tiene la obligación de resolver si esa legislación cumple con todos y cada uno de los mandatos de la Constitución del Estado Libre Asociado de Puerto Rico y si la Rama Ejecutiva —el "Estado"— ha ejercido su obligación de poner en vigor dicha legislación acorde con las referidas disposiciones constitucionales y las demás leyes que componen nuestro ordenamiento jurídico. Este Tribunal, en consecuencia, es el máximo *custodio y defensor* de la *pureza y corrección* que debe imperar en la implantación de las leyes por parte del Estado y en los procedimientos judiciales que se llevan a cabo en los tribunales de instancia de nuestro País.

La opinión mayoritaria emitida, al confirmar las sentencias apeladas, *avala y condona una de las páginas más tristes y lamentables en nuestra historia de pueblo civilizado en lo concerniente a la observancia de los derechos civiles de nuestros ciudadanos y al derecho de todo acusado a tener un juicio justo e imparcial,* derechos garantizados por la Constitución del Estado Libre Asociado de Puerto Rico y la Constitución de los Estados Unidos de América. Al así actuar, esa mayoría pasa totalmente por alto el hecho de que "el Estado", y el Departamento de Justicia que lo representa en los procesos criminales, desde un punto de vista "jurídico e histórico" son uno sólo; *esto es, el Estado y sus*

*instituciones son un ente contínuo que no es afectado por los cambios en el "personal" directivo de la Rama Ejecutiva que ocurren como consecuencia del advenimiento al escenario político de nuevas administraciones de gobierno.*

En relación con la fase investigativa y procesal de los casos ante nuestra consideración, *la actuación y conducta observada por el "Estado", y su Departamento de Justicia, es una que verdaderamente resulta difícil de aceptar por aquellos que, desde este estrado apelativo, tenemos la difícil y sensitiva encomienda de impartir justicia en nuestro País.* Nuestro ordenamiento jurídico provee un procedimiento para que el culpable de la comisión de unos hechos delictivos pague por su conducta antisocial y criminal. Ese mismo ordenamiento sin embargo, garantiza a *todo* ciudadano residente en nuestro País —no importa su origen, condición social, color o raza— que ese procedimiento criminal pautado será uno justo e imparcial donde el propio "Estado" viene en la obligación de garantizarle un debido procedimiento de ley; ello independientemente de la gravedad de los hechos delictivos que se le imputen haber cometido a ese ciudadano.

*El procedimiento a que fueron sometidos los aquí apelantes es un vivo ejemplo de uno totalmente viciado desde sus comienzos hasta su final.* El mismo fue uno donde muchos de los funcionarios, depositarios de la grave responsabilidad de garantizar unos derechos constitucionales, aparentemente antepusieron sus intereses personales y políticos al objetivo y propósito de todo proceso criminal: la búsqueda de la verdad y el castigo del culpable en un proceso justo e imparcial donde se ha observado el debido procedimiento de ley. *Todo lo que se necesita para poderse uno percatar de los graves errores cometidos, y de lo viciado, del procedimiento seguido a nivel de instancia, es una simple lectura de la opinión mayoritaria emitida. Ello resulta ser tan flagrante y aparente que realmente no hay necesidad de señalarlo y destacarlo.*

Es debido a esta situación que —no obstante la horrible forma y manera en que la víctima en el presente caso fue privada de su vida, y de la posibilidad de herir las sensibilidades de las distintas personas que participaron a lo largo de todo el procedimiento— *no podemos permanecer en silencio ante lo que consideramos un desvarío de la justicia.* Es por ello que disentimos. (Énfasis en el original.) *Pueblo v. Echevarría Rodríguez I*, 128 D.P.R. 299, 382–384 (1991).

## II

La completa y correcta comprensión de lo antes aseverado hace necesario que hagamos una breve relación de los hechos —*desde un punto de vista procesal*— que precedieron a la radicación de los recursos de apelación hoy ante nuestra consideración.

La muerte del Sr. Luis Vigoreaux ocurrió el día 17 de enero de 1983 en un paraje solitario —conocido como "sector Los Guanos"— de Cupey, Puerto Rico. Su cuerpo, sin vida y carbonizado, fue descubierto horas más tarde. En relación con dichos hechos delictivos, el Estado *originalmente sometió*, para la determinación de causa probable para arresto, unos formularios de denuncia ante un magistrado el día 2 de septiembre de 1984 contra, entre otros, *los ciudadanos Lydia Echevarría Rodríguez y los hermanos Rubén y Jorge Jaime Guadalupe Núñez* por los delitos de conspiración, secuestro agravado, asesinato en primer grado e infracción a los Arts. 4, 6 y 7 de la Ley de Armas de Puerto Rico, 25 L.P.R.A. secs. 414, 416 y 417. La determinación de causa probable para arresto que en dicho día se hiciera contra los mencionados imputados *estuvo, principalmente, basada en el testimonio de Juan Orlando Sepúlveda, conocido por "Bronco"*.

La apelante Lydia Echevarría Rodríguez fue arrestada al otro día, esto es, el día 3 de septiembre de 1984 en una residencia localizada en la Urbanización University Gardens, Río Piedras, Puerto Rico. En dicho arresto —el cual fue televisado a todo Puerto Rico por varias estaciones de televisión— *intervinieron* agentes del Negociado de Investigaciones Especiales del Departamento de Justicia de Puerto Rico (N.I.E.) *y el propio Secretario de dicho departamento*, el Lcdo. Nelson Martínez Acosta.

El *testigo principal* del Estado en la vista preliminar que, con relación a los delitos graves, requiere la Regla 23 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, lo fue el mencionado Juan Orlando Sepúlveda, c/p "Bronco". En *síntesis*, la versión de "Bronco" fue a los efectos de que la señora Echevarría Rodríguez había sido la "autora intelectual" del asesinato, pagándole ella a él

y a los hermanos Guadalupe una determinada suma de dinero para que ellos llevaran a cabo el asesinato; hecho que realizaron, conforme la declaración de dicho testigo, en la propia residencia de la señora Echevarría Rodríguez. Determinada causa probable por los delitos antes indicados al amparo de las disposiciones de la citada Regla 23 de Procedimiento Criminal, el Ministerio Fiscal radicó el 6 de diciembre de 1984 los correspondientes pliegos acusatorios —Criminales Núms. G-84-3149 al G-84-3166— contra las antes mencionadas personas ante el Tribunal Superior de Puerto Rico, Sala de San Juan.

En lo que específicamente concierne a la señora Echevarría Rodríguez, el acto de lectura de acusación se llevó a cabo ante el tribunal de instancia el día 10 de diciembre de 1984. En dicha ocasión, el tribunal, a petición de la representación legal de Echevarría Rodríguez, le concedió a ésta un término de diez (10) días para hacer alegación. El acto del juicio quedó señalado para el día 25 de febrero de 1985. Dentro del referido término de diez (10) días, la defensa radicó ante el tribunal de instancia —el 18 de diciembre de 1984— una moción para desestimar. El Ministerio Fiscal, mediante escrito de fecha 26 de diciembre de 1984, se opuso a la desestimación solicitada.[2]

Mediante moción de fecha 19 de febrero de 1985 la señora Echevarría Rodríguez solicitó del tribunal de instancia que ordenara el *sobreseimiento* de las acusaciones contra ella radicadas, *a tenor con las disposiciones de la Regla 247(b) de Procedimiento Criminal*, 34 L.P.R.A. Ap. II, por el fundamento de que tenía información que *tendía a indicar* que el testimonio prestado en vista preliminar por el testigo Sepúlveda era uno perjuro. El tribunal de instancia determinó que dispondría de todas las mociones radicadas el día señalado para la vista en su fondo del caso. Tres (3) días más tarde, esto es, *mediante moción de fecha 22 de febrero de 1985*, el Ministerio Fiscal solicitó la suspensión del juicio, señalado para el 25 de febrero, por el fundamento de que

---

(2) La defensa, posteriormente, desistió de la referida moción de desestimación, solicitud que el foro de instancia concedió.

"el Departamento de Justicia ha iniciado una reinvestigación" del caso. Caso Núm. O-85-188, Apéndice, pág. 65.

Ese mismo día 22 de febrero, el nuevo incumbente en la Secretaría de Justicia, Lcdo. Héctor Rivera Cruz, emitió un comunicado *oficial* de prensa.(3) En el mismo, el mencionado funcionario, entre otras, expresó "estar *insatisfecho* con la *calidad de la investigación* que se llevó a cabo [en el caso] y que motivó la *prematura radicación de los cargos ante el Tribunal*, calificándola de '*deficiente y fragmentada*'". Caso Núm. O-85-188, Apéndice, pág. 80. Expresó, en adición, el Secretario Rivera Cruz en dicho comunicado oficial que esa "'investigación que se practicó *no me puede satisfacer porque demuestra que no se cumplieron con todos los criterios de profesionalismo y de competencia profesional* que exijo que se observen por todos los fiscales en Puerto Rico al investigar los casos'". Íd. Expresó, además, el titular del Departamento de Justicia que: "'[e]stimo *que se precipitó la radicación de los cargos* y se quedaron sin examinar una serie de ángulos esenciales, *lo que puede dar margen a una evaluación de la responsabilidad profesional de los que tomaron esa determinación, incluyendo al ex-Secretario de Justicia, Nelson Martínez Acosta*'." (Énfasis suplido.) Íd., pág. 81. Debemos consignar, finalmente, que el licenciado Rivera Cruz expresó en dicho comunicado de prensa que llegó a las anteriormente expresadas conclusiones "luego de considerar el *informe confidencial* de 49 páginas que le rindió el subsecretario, César R. Miranda, *informe que evaluó la investigación [originalmente] realizada*" respecto a los sucesos que culminaron en la muerte del señor Vigoreaux. (Énfasis suplido.) Íd., pág. 80.

Luego de la ocurrencia de una serie de incidentes que resulta innecesario mencionar, *el 17 de abril de 1985 el Ministerio Fiscal radicó un escrito mediante el cual le informó a la Sala de San Juan del Tribunal Superior que, como consecuencia de una reinvestigación que había realizado del caso, tres (3) días antes,*

---

(3) Dicho comunicado de prensa fue incluido, como *Exhibit* A, en una moción de fecha 27 de febrero de 1985 que radicara ante el tribunal de instancia el Ministerio Fiscal.

*esto es, el 14 de abril de 1985, había radicado nuevas denuncias ante el Tribunal de Distrito en relación con la muerte del Sr. Luis Vigoreaux por los mismos delitos que originalmente le había imputado a Echevarría Rodríguez y a los hermanos Guadalupe Núñez;* esta vez, *sin embargo,* contra Echevarría Rodríguez y un ciudadano de nombre David López Watts, *a base del testimonio de un nuevo testigo: Francisco (Papo) Newman.* En esta ocasión, por voz del testigo Papo Newman, la teoría del Estado fue a los efectos de que, aun cuando la señora Echevarría Rodríguez había sido la "autora intelectual" del crimen imputádole, los que habían físicamente cometido el asesinato, por paga y siguiendo órdenes de la señora Echevarría, lo eran el testigo Newman y el coacusado López Watts.

En otras palabras, mientras todavía estaban *pendientes y vigentes* ante la Sala de San Juan del Tribunal Superior los procedimientos judiciales contra Echevarría Rodríguez y los hermanos Guadalupe Núñez, *el Estado sin informarle nada a dicho foro judicial sometió el caso nuevamente, a base de otra prueba —irreconciliable con la primera versión— ante otra sección y sala del Tribunal de Primera Instancia para determinación de causa probable para arresto.*

Mientras tanto —y en relación con los Casos Criminales Núms. G-84-3149 al G-84-3166, todavía pendientes contra la señora Echevarría Rodríguez y los hermanos Guadalupe Núñez ante el Tribunal Superior y en una vista que dicho foro había señalado para la discusión de todas las mociones pendientes de adjudicación— *el Ministerio Fiscal radicó, en corte abierta, una moción de fecha 3 de mayo de 1985 en la que solicitó la desestimación, al amparo de la Regla 64(p) de Procedimiento Criminal, 34 L.P.R.A. Ap. II, de las acusaciones originalmente radicadas.* La misma estaba predicada en que, *conforme la reinvestigación del caso realizada por el Estado,* el testimonio prestado por el testigo Juan Orlando Sepúlveda, alias "Bronco", durante la celebración de la vista preliminar era uno *alegadamente perjuro,* razón por la cual la determinación de causa probable que se había realizado a nivel de vista preliminar

era una que no había sido "conforme a derecho". La *representación legal* de la señora Echevarría Rodríguez se *reiteró* en su posición de que *de ello así ser,* lo jurídicamente procedente *era sobreseer los pliegos acusatorios al amparo de las disposiciones de la citada Regla 247(b) de Procedimiento Criminal.* En dicha vista las partes se limitaron a *argumentar oralmente* sus respectivas posiciones; *esto es, no hubo desfile de prueba alguna.*

El Tribunal Superior dilucidó y resolvió la controversia planteada mediante sentencia de fecha 20 de mayo de 1985. En lo referente a los coacusados Guadalupe Núñez, dicho foro archivó las acusaciones contra éstos bajo las disposiciones de la Regla 247 de Procedimiento Criminal, 34 L.P.R.A. Ap. II. En cuanto a la señora Echevarría Rodríguez, un análisis cuidadoso de la sentencia emitida demuestra, en primer lugar, que el referido foro razonó que no "sería justo" decretar el sobreseimiento de las acusaciones bajo las disposiciones de la Regla 247(b) de Procedimiento Criminal, ante, por cuanto ello significaría que "el fiscal estaría impedido de continuar con el proceso ya comenzado", esto es, las *nuevas denuncias,* que a espaldas de dicho foro judicial, ya había radicado el Ministerio Fiscal contra Echevarría Rodríguez y López Watts a nivel del Tribunal de Distrito. Caso Núm. O-85-346, Apéndice, pág. 21. Basándose, principalmente, en que la *terminología* del inciso (p) de la Regla 64 de Procedimiento Criminal, ante, *no* contiene "prohibición expresa alguna que impida que el fiscal pueda reclamar los derechos que entraña el mismo, si está convencido, como en el presente caso, de que hubo una determinación de causa probable, contrario a derecho", *concluyó el tribunal de instancia* que la citada *Regla 64(p)* de Procedimiento Criminal constituía el vehículo procesal "adecuado" para decretar, *a petición del Ministerio Fiscal,* la desestimación de las acusaciones en una situación como la que estaba ante su consideración. Caso Núm. O-85-346, Apéndice, pág. 17. En consecuencia, *ordenó* "la desestimación *sin* perjuicio" de las acusaciones originalmente radicadas contra la señora Echevarría Rodríguez en virtud de la solicitud que a esos efectos le había hecho el Ministerio Fiscal. La señora Echevarría Rodríguez

cuestionó ante este Tribunal —vía *certiorari*— la mencionada actuación. El Tribunal, mediante Resolución de fecha 31 de mayo de 1985, proveyó "no ha lugar" a dicho recurso.(4)

Determinada causa probable en una *segunda* vista preliminar en relación con las *nuevas denuncias* radicadas por el Estado contra Echevarría Rodríguez y López Watts —celebrada la misma al amparo de las disposiciones de la Regla 23 de Procedimiento Criminal, ante, y en la cual el testigo principal, esta vez, lo fue Francisco (Papo) Newman— el Ministerio Fiscal radicó *nuevos* pliegos acusatorios, Criminales Núms. G-85-2477 al G-85-2485, ante el Tribunal Superior de Puerto Rico, Sala de San Juan. Mediante moción de desestimación y otros extremos, de fecha 10 de septiembre de 1985, *la representación legal de la señora Echevarría Rodríguez planteó que el Ministerio Público carecía de facultad para radicar los nuevos cargos criminales* por cuanto el *archivo decretado* por el tribunal el día 20 de mayo de 1985, en relación con las acusaciones originales, *constituía un impedimento para la radicación de nuevos cargos por los mismos hechos,* moción que fue declarada sin lugar. Celebrado el juicio, *en el cual el testigo principal del Estado lo fue Francisco (Papo) Newman,* el Jurado que intervino en el mismo decretó la culpabilidad de Lydia Echevarría Rodríguez por los delitos imputados de asesinato en primer grado, secuestro agravado y conspiración. En relación con David López Watts el Jurado, no obstante condenarlo por los delitos de secuestro agravado, conspiración y daños agravados, lo absolvió del delito de asesinato en primer grado.

Inconforme, ambos apelaron ante este Tribunal. En los recursos que a esos efectos radicaron, le imputaron al foro de instancia la comisión total de veinte (20) errores. Como hemos visto, la opinión mayoritaria emitida el 25 de abril de 1991 sostiene que

_____

(4) En el recurso de *certiorari* que se radicara, O-85-346, la señora Echevarría Rodríguez *específicamente* le imputó al foro de instancia haber errado al desestimar bajo las disposiciones de la Regla 64(p) de Procedimiento Criminal, 34 L.P.R.A. Ap. II, los pliegos acusatorios que contra ella pesaban. *El Juez suscribiente no intervino en la consideración y solución del mencionado recurso.*

dichos señalamientos de error son completamente inmeritorios. Por nuestra parte, y como expresáramos en la opinión que emitiéramos en la fecha antes indicada, somos del criterio que varios de los errores señalados fueron efectivamente cometidos. Ello, en unión a la "conducta" observada por el Estado en el presente caso, *hace imperativo la revocación de las sentencias apeladas.*

### III

Conforme establece nuestro ordenamiento jurídico, el Secretario del Departamento de Justicia de Puerto Rico —bien personalmente, por medio de sus auxiliares o cualesquiera de los fiscales del referido departamento— es el funcionario de la Rama Ejecutiva que, *de ordinario*, ostenta la representación legal del Estado Libre Asociado de Puerto Rico ante los tribunales de justicia de nuestro País en las causas criminales.[5] Dicho funcionario, como miembro con rango constitucional del gabinete del Gobernador, es nombrado por éste con el consejo y consentimiento del Senado de Puerto Rico. Véanse: 3 L.P.R.A. sec. 72; *In re Secretario de Justicia,* 118 D.P.R. 827, 846 (1987). Debe mantenerse presente que, como expresáramos en la opinión desidente que emitiéramos en el presente caso el día 25 de abril de 1991, el Departamento de Justicia de Puerto Rico es un "ente contínuo que no es afectado por los cambios en el 'personal' directivo de la Rama Ejecutiva que ocurren como consecuencia del advenimiento al escenario político de nuevas administraciones de gobierno". (Énfasis suprimido.) *Pueblo v. Echevarría Rodríguez I,* ante, pág. 383. Ello tiene la consecuencia inexorable de que el referido departamento responde, *desde un punto de vista institucional,* ante la sociedad puertorriqueña en general, y frente a los tribunales de justicia de nuestro País, *por las actuaciones, correctas o erróneas, en que haya incurrido el referido departamento en el pasado.*

---

(5) En algunas situaciones, un "fiscal especial independiente" es el que ostenta la representación del Estado en relación con ciertos asuntos de índole criminal. A esos efectos, véase la Ley Núm. 2 de 23 de febrero de 1988 (3 L.P.R.A. secs. 99h–99z).

En lo referente a un proceso penal, al comparecer ante la Rama Judicial en representación del Poder Ejecutivo, *el Departamento de Justicia representa al "Estado"*, un litigante ciertamente poderoso que, de ordinario, cuenta con recursos mayores que el ciudadano común y corriente que es acusado de la supuesta comisión de un delito público. El Estado no sólo tiene a su disposición una poderosa maquinaria investigativa, sino que tiene a su alcance recursos económicos normalmente superiores a los del imputado de delito. Por otro lado, no podemos sustraernos del perjuicio que significa para uno de nuestros conciudadanos, y sus familiares, el ser acusado injustamente de la supuesta comisión de un delito público. El estigma que ello conlleva en la sociedad no se borra ni aún con la exoneración más enérgica de que sea capaz un tribunal de justicia; el perjuicio causado es uno permanente y, realmente, irreparable.

Resulta lógico y razonable, en consecuencia, que nuestro ordenamiento jurídico *le exija* al Estado que *realice*, en relación con la comisión de unos hechos delictivos, *una investigación completa, responsable y profesional,* y que *antes de comparecer ante el foro judicial,* con el propósito de encausar criminalmente a un ciudadano en relación con esos hechos delictivos, *se asegure de que cuenta con evidencia veraz, competente y suficiente para así encausarlo. Cf. Romero Arroyo v. E.L.A.,* 127 D.P.R. 724 (1991).[6] Ello, no hay duda, es la principal razón para la existencia del mandato contenido en el Art. II, Sec. 11 de la Constitución del Estado Libre Asociado de Puerto Rico, L.P.R.A., Tomo 1, ed. 1982, pág. 308, a los efectos de que "[n]adie será puesto en riesgo de ser castigado dos veces por el mismo delito"; disposición constitucional que le niega al Estado una segunda oportunidad si de primera intención comparece ante el foro judicial con una prueba "flaca o descarnada", o indigna de crédito, y el ciudadano

---

[6] El incumplimiento con la arriba mencionada obligación puede, inclusive, desembocar en responsabilidad civil para el Estado. *Romero Arroyo v. E.L.A.,* 127 D.P.R. 724 (1991), y en casos de conducta impropia o inmoral por parte del Fiscal, en la destitución de éste. Véase el Art. 5 de la Ley Núm. 23 de 24 de julio de 1952 (3 L.P.R.A. sec. 93a).

es exonerado, después de la celebración de un juicio en los méritos, de las imputaciones que le haya hecho el Estado.

En relación con esa "obligación" del Estado de comparecer ante la Rama Judicial con prueba que sea "suficiente en derecho", debe mantenerse presente que las Reglas de Procedimiento Criminal, las cuales regulan el procedimiento a llevarse a cabo en el procesamiento de un ciudadano acusado de la supuesta comisión de un delito público, *limitan el número de oportunidades* que tiene el Estado para encausar criminalmente a un ciudadano en juicio público, *inclusive, antes de que el asunto llegue a la etapa del juicio en su fondo.* Como sabemos, como consecuencia de las disposiciones de las Reglas 23 y 24 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, *y de la jurisprudencia de este Tribunal interpretativa de las mismas*, si un magistrado del Tribunal Superior, en una vista preliminar "en alzada", confirma la determinación de no causa probable de un magistrado del Tribunal de Distrito, el Ministerio Fiscal *está impedido* de radicar acusación alguna contra ese ciudadano en nuestros tribunales de instancia. *Pueblo v. Cruz Justiniano*, 116 D.P.R. 28 (1984).

Otro vivo ejemplo de la incuestionable existencia en nuestra jurisdicción de la arraigada tendencia, o norma, *que "limita" el poder del Estado para procesar criminalmente a los ciudadanos de este País* lo constituye la decisión de vanguardia que emitiera este Tribunal hace cerca de dos (2) décadas en *Plard Fagundo v. Tribunal Superior*, 101 D.P.R. 444 (1973). *Señalando que la norma generalmente aceptada en otras jurisdicciones*, a los efectos de que es válida la celebración de posteriores procesos si el Jurado no puede ponerse de acuerdo en el primero, *se aparta del* "claro entredicho constitucional —[de que] nadie será puesto en riesgo de ser castigado dos veces por el mismo delito— y que [la referida regla general] sólo es sostenible como una necesidad", íd., pág. 451, *establecimos la norma* de que en nuestra jurisdicción *sólo* podrá celebrarse un segundo, y último proceso, contra un acusado por el mismo delito cuando el Jurado no puede ponerse de acuerdo en el primero. Esto es, si en el segundo proceso el Jurado

igualmente no puede llegar a un veredicto, el Estado está *impedido* de someter al ciudadano a juicio nuevamente.

De manera pues que *no* debe haber duda en la mente de persona alguna sobre el hecho *de que nuestro ordenamiento jurídico esta diseñado, u orientado, hacia la exigencia al Estado de que, al comparecer por vez primera ante el foro judicial con el propósito de encausar criminalmente a un ciudadano, el mismo viene en la obligación de asegurarse, de antemano, que la evidencia con que cuenta contra la persona que pretende encausar criminalmente es una que no sólo versa sobre todos y cada uno de los elementos del delito por el cual lo acusa, sino que dicha evidencia es una veraz, confiable y satisfactoria,* esto es, "suficiente en derecho". *Pueblo v. Ortiz Morales,* 86 D.P.R. 456 (1962); *Pueblo v. Carrasquillo Carrasquillo,* 102 D.P.R. 545, 552 (1974); *Pueblo v. Cabán Torres,* 117 D.P.R. 645, 652 (1986). Dicha "exigencia", u "obligación", persigue el fin último, *y óptimo,* de que el ciudadano *únicamente* sea llevado por el Estado ante el foro judicial, con el propósito de que se dilucide su inocencia o culpabilidad, *en una sola ocasión.*

## IV

En vista de los *hechos particulares* que plantea el presente recurso, *resulta pertinente* señalar que las Reglas de Procedimiento Criminal intentan "equiparar" los derechos del Estado y del imputado de delito en lo referente a la facultad del Estado de procesar criminalmente a un ciudadano por determinado delito. Como hemos visto, las antes citadas Reglas 23 y 24 de Procedimiento Criminal le conceden al Estado la oportunidad de revisar la determinación de no causa probable, o de causa por un delito menor al originalmente imputado, que realice un magistrado a nivel de vista preliminar, proveyéndole un mecanismo de vista preliminar "en alzada" ante un magistrado de categoría superior.

La *Regla 64(p)* de Procedimiento Criminal, ante, por el contrario, le provee *al imputado de delito* la oportunidad de *cuestionar la corrección jurídica de la determinación* que de

causa probable haya hecho el magistrado en la vista preliminar bajo las disposiciones de la citada Regla 23 de Procedimiento Criminal. Como sabemos, la referida Regla 64(p) de Procedimiento Criminal faculta al *imputado de delito* para solicitar la *desestimación de la acusación* contra él radicada por el Estado amparándose, en síntesis y en lo pertinente, en que la determinación de causa probable no fue hecha "con arreglo a la ley y a derecho".

Por otro lado, resulta igualmente pertinente señalar que nuestro ordenamiento jurídico contempla la situación de que el Estado haya radicado errónea, o *injustamente*, una acusación contra un ciudadano. En relación con dicha situación, las Reglas de Procedimiento Criminal le brindan al Estado —*y al foro judicial a "instancia propia"*— la oportunidad de *corregir* ese error o esa injusticia mediante el mecanismo procesal del "sobreseimiento" de la acusación. Nos referimos, naturalmente, a la *Regla 247* de Procedimiento Criminal, ante.(7) Es de notar, sin embargo, que la referida disposición reglamentaria expresamente dispone, *en su inciso (d)*, que el "sobreseimiento decretado de acuerdo con esta regla *impedirá un nuevo proceso* por los mismos hechos". (Énfasis suplido.) Así, *específicamente*, lo ha resuelto

---

(7) Para la fecha en que se llevaron a cabo los procedimientos del presente caso a nivel de instancia, la Regla 247 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, disponía:

"(a) *Por el Secretario de Justicia o fiscal.* El Secretario de Justicia o el fiscal podrán, previa aprobación del tribunal, sobreseer una acusación con respecto a todos o algunos de los acusados, y el proceso contra dichos acusados quedará terminado. Excepto según se dispone en el apartado (c) de esta regla, dicho sobreseimiento no podrá solicitarse durante el juicio, sin el consentimiento de dichos acusados.

"(b) *Por el tribunal; orden.* El tribunal, *a instancia propia*, o a petición del fiscal o en pro de la justicia, podrá decretar el sobreseimiento de una acusación o denuncia. Las causas de sobreseimiento deberán exponerse en la orden que al efecto se dictare, la cual se unirá al expediente del proceso.

"(c) *Exclusión de acusado para prestar testimonio.* En un proceso contra dos o más personas el tribunal podrá, en cualquier momento después del comienzo del juicio pero antes que los acusados hubieren comenzado su defensa, ordenar que se excluya del proceso a cualquier acusado, de modo que pueda servir de testigo de El Pueblo de Puerto Rico. Cuando se hubiere incluido a dos o más personas en la misma acusación y el tribunal fuere de opinión que no existen pruebas suficientes contra uno de los acusados, deberá decretar que se le excluya del proceso, antes de terminarse el período de la prueba, de modo que pueda servir de testigo a su compañero.

"(d) *Efectos. El sobreseimiento decretado de acuerdo con esta regla impedirá un nuevo proceso por los mismos hechos.*" (Énfasis suplido.)

este Tribunal. Véase *Pueblo v. Monge Sánchez*, 122 D.P.R. 590 (1988).

V

¿Cumplió el Estado con *su obligación* de comparecer ante la Rama Judicial con prueba veraz, confiable, competente y "suficiente en derecho", obtenida la misma en una investigación responsable, profesional y completa de los hechos delictivos que culminaron en la muerte del Sr. Luis Vigoreaux? *La contestación en la negativa resulta ser obvia.* De hecho, nos atrevemos a expresar —*sin temor alguno a equivocarnos*— que el curso de acción seguido por el Estado, esto es, el Departamento de Justicia, en el presente caso adquirió las características de una *pesadilla* que parece haber sido obtenida de una página de las novelas escritas por el célebre autor Franz Kafka;[8] *actuación que constituye una de las páginas más trágicas en la historia judicial de Puerto Rico.*

Recordaremos que el *2 de septiembre de 1984*, funcionarios del Departamento de Justicia acudieron ante el foro judicial sosteniendo la teoría de que la Sra. Lydia Echevarría Rodríguez era la "autora intelectual" de los hechos delictivos que se le imputaban, habiendo utilizado en la perpetración de los mismos a un individuo de nombre Juan Orlando Sepúlveda, c/p "Bronco". Dicha teoría la sostuvo el Ministerio Fiscal en la determinación de causa probable para arresto, *en la vista preliminar que se celebró conforme las disposiciones de la citada Regla 23 de Procedimiento Criminal*, e, inclusive, en la etapa de lectura de acusación y procedimientos pre-juicio en su fondo a nivel del Tribunal Superior de Puerto Rico.

Ello no obstante, *el 14 de abril de 1985* —estando *todavía pendientes y vigentes* ante la Sala de San Juan del Tribunal Superior *las acusaciones* que se habían radicado a base de la teoría expuesta el 2 de septiembre de 1984— *ese mismo Depar-*

---

[8] Autor, entre otras obras, de *El Juicio* y la *Metamorfosis*.

*tamento de Justicia* acudió ante una sección y Sala distinta del Tribunal de Primera Instancia sosteniendo, *esta vez*, que la señora Echevarría Rodríguez, como autor intelectual, había perpetrado los hechos delictivos a través de un individuo de nombre Francisco (Papo) Newman, *el testimonio del cual era, y es, irreconciliable con el testimonio de Juan Orlando Sepúlveda*; obteniendo de esta forma, *y a espaldas del Tribunal Superior*, una *nueva* determinación de causa probable para arresto en contra de la señora Echevarría Rodríguez en relación con *los mismos hechos delictivos* y por *los mismos delitos* sobre los cuales versaban las acusaciones pendientes ante el Tribunal Superior.

*¿La explicación del Departamento de Justicia para tan inaudita situación y proceder?* Que los funcionarios del Departamento de Justicia —incluyendo al ex Secretario Martínez Acosta— actuando en *forma prematura, precipitada y no profesional*, habían sometido los casos originalmente contra la señora Echevarría Rodríguez el 2 de septiembre de 1984 a base del testimonio "perjuro" del testigo Juan Orlando Sepúlveda, c/p "Bronco". Esto es, el *propio* Departamento de Justicia se encargó de informarle al foro judicial, en el año 1985, que en el año de 1984 ese *mismo* departamento *incumplió crasamente* con la *obligación* que tiene de actuar *en forma legal, responsable y de buena fe* al comparecer ante la Rama Judicial con el propósito de encausar criminalmente a unas personas.

Independientemente de ello y de la *impermisibilidad e ilegalidad* del curso de acción seguido por el Departamento de Justicia al someter *nuevamente* el caso ante el foro judicial estando todavía pendientes ante el Tribunal Superior las acusaciones originalmente radicadas,(9) *procedemos a evaluar la corrección jurídica de la actuación del referido tribunal al "deses-*

---

(9) Somos del criterio que nadie puede negar, por lo menos con alguna seriedad, la ilegalidad e impermisibilidad de la actuación del Departamento de Justicia en este aspecto. *El resultado de su actuación fue el de mantener vigentes y pendientes por un período aproximado de mes y medio* —del 14 de abril, fecha en que sometieron los casos por segunda ocasión, hasta el 20 de mayo de 1985, fecha en que el Tribunal Superior "desestimó" las acusaciones pendientes— *dos (2) procedimientos criminales paralelos que versaban sobre los mismos hechos y los mismos delitos.*

*timar*" *las acusaciones obtenidas a base del testimonio de Juan Orlando Sepúlveda, c/p "Bronco"*; actuación o determinación judicial del foro de instancia *que, naturalmente, "despejó el camino" para que el Estado pudiera procesar a Lydia Echevarría Rodríguez y a David López Watts a base de las acusaciones obtenidas en virtud del testimonio del testigo Francisco (Papo) Newman.*

## VI

Recordaremos que el Tribunal Superior "desestimó" las acusaciones *originalmente* radicadas, *a petición del Ministerio Fiscal*, al amparo de las disposiciones de la *Regla 64(p)* de Procedimiento Criminal, ante. No obstante el hecho de que la opinión mayoritaria emitida avala esa actuación, *somos del criterio que el foro de instancia estaba jurídicamente impedido de actuar bajo las disposiciones de la citada Regla 64(p).*

El apelante que trajo este asunto en apelación ante la consideración de este Tribunal, aun cuando en forma indirecta, lo es David López Watts. Así lo hace éste en la discusión de sus señalamientos de error números tercero y cuarto. La mayoría del Tribunal despacha dicho planteamiento, en forma superficial, de la manera siguiente:

En su alegato, el apelante comienza la discusión de estos señalamientos *expresando su objeción a que se autorizara la presentación de nuevas acusaciones en este caso* contra él y la

---

La *mejor evidencia* de la ilegalidad de ese proceder lo constituye el hecho de que la señora Echevarría Rodríguez, estando ya disfrutando legalmente de libertad bajo fianza respecto a los cargos criminales orginalmente radicados, pudo haber sido arrestada, y privada de su libertad nuevamente, si se diligencia la orden de arresto expedida como consecuencia de la segunda determinación de causa probable.

*Dicha conducta es una conducta reprensible que no es digna del Departamento de Justicia de Puerto Rico ni del Secretario del mismo.* Tal parece ser que el Departamento de Justicia, *antes de solicitar* el archivo de las acusaciones pendientes ante el Tribunal Superior, *quería "asegurarse" de que obtendría una determinación de causa probable a base del testimonio de Francisco (Papo) Newman.*

Ese hecho, *aparte de demostrar la poca fe que el Departamento tenía en ese testigo*, es una actuación que *deja mucho que desear* y *no es* la que el Pueblo de Puerto Rico tiene *el derecho* a esperar, *en todo momento*, de los funcionarios del referido departamento.

señora Echevarría Rodríguez, cuando con anterioridad a estos incidentes *se habían archivado unas primeras acusaciones* fundamentadas en los mismos hechos presentados contra la coacusada Lydia Echevarría y otros acusados. Aunque el acusado López Watts *no articula claramente* su objeción ni el fundamento de la misma, *asumimos que se apoya en la prohibición contenida en el inciso (d) de la Regla 247 de Procedimiento Criminal,* 34 L.P.R.A. Ap. II, a los efectos de que el *sobreseimiento decretado* de acuerdo con esta regla *impedirá* un nuevo procedimiento por los mismos hechos. *No obstante, de una lectura de la Resolución* de 20 de mayo de 1985 de la Juez Superior, Hon. Ygrí Rivera, que desestimó las primeras acusaciones, *surge que tal acción fue tomada al amparo de la Regla 64(p) de Procedimiento Criminal,* 34 L.P.R.A. Ap. II, por no haberse determinado causa probable para acusar conforme a derecho. *Nótese que la Regla 67 de ese mismo cuerpo legal,* 34 L.P.R.A. Ap. II, *autoriza el inicio de un nuevo procedimiento en caso de una desestimación bajo la Regla 64(p) de Procedimiento Criminal, supra.*

*Finalmente,* considérese que el planteamiento en cuestión lo levanta el apelante López Watts, el cual no figuraba como acusado en el primer procedimiento, *por lo que el mismo es no sólo inmeritorio sino, además, impertinente en lo que a este acusado concierne.* (Énfasis suplido.) *Pueblo v. Echevarría Rodríguez I,* ante, págs. 374–375.

De una lectura de lo expuesto por el Tribunal al rechazar la contención del apelante López Watts surge, a nuestro juicio, que la mayoría del Tribunal entendió, *en primer lugar,* que el señalamiento de López Watts a los efectos de que el Estado —en vista de lo dispuesto en la citada Regla 247(d) de Procedimiento Criminal— estaba impedido de radicar nuevas acusaciones *podría* ser correcto *a no ser* por el hecho de que el foro de instancia desestimó las acusaciones originalmente radicadas al amparo de las disposiciones de la citada Regla 64(p); y, en *segundo* lugar, que de todas formas, el apelante López Watts no tenía capacidad (*standing*) para hacer el referido planteamiento por cuanto el mismo resulta ser "impertinente" en cuanto a éste.

Aparte del hecho de que *no* es correcto que dicho planteamiento sea "inmeritorio", *ni* que el mismo es enteramente "impertinente" en cuanto al apelante López Watts concierne, *en lo*

*referente a la facultad de este Tribunal para considerar el mismo*, sabido es que es *obligación ineludible* de *todo* tribunal velar por que *se le haga justicia* a todo aquel que de acuerdo con el más *sano criterio* del juzgador tiene *derecho* a ella, y que, a esos fines, este Tribunal *atenderá y resolverá* cualquier situación que, a pesar de que no haya sido debidamente levantada por un apelante, *amerite* ser corregida por este Tribunal en bien de la justicia. *Pueblo v. Soto Ríos*, 95 D.P.R. 483, 485 (1967); *Santiago Cruz v. Hernández Andino*, 91 D.P.R. 709, 712 (1965); *Dávila v. Valdejully*, 84 D.P.R. 101, 104 (1961).

Determinado que no sólo tenemos facultad para considerar el planteamiento sino que venimos *obligados* a así hacerlo, *si es que deseamos que se nos considere como un tribunal de justicia*, examinamos *la facultad* del tribunal de instancia *para desestimar* las referidas acusaciones bajo el *inciso (p)* de la *Regla 64* de Procedimiento Criminal, ante, *a petición* del Ministerio Fiscal. *Es un hecho patente y obvio que dicho foro no tenía esa facultad; realmente sorprende que este Tribunal así lo haya resuelto.*

En *primer lugar*, este Tribunal *reiteradamente ha resuelto* que una moción de desestimación, predicada en lo dispuesto en el inciso (p) de la citada Regla 64 de Procedimiento Criminal, *es un remedio que sólo puede concederse a petición del acusado*. Véanse: *Pueblo v. Mena Peraza*, 113 D.P.R. 275, 279 (1982); *Pueblo v. Tribunal Superior*, 104 D.P.R. 454, 458 (1975); *Pueblo v. Tribunal Superior*, 94 D.P.R. 59, 63 (1967). *Dicho de otra forma*, el mecanismo procesal de la moción de desestimación que provee la Regla 64(p) de Procedimiento Criminal, ante, *no está al alcance o no puede ser utilizado por el tribunal a petición del Estado.* [10]

En segundo lugar, este Tribunal ha resuelto, *en innumerables ocasiones*, que la *determinación de causa probable* que hace un magistrado al amparo de las disposiciones de la *Regla 23* de

---

[10] *Resulta procedente, en estos momentos, enfatizar el hecho de que la señora Echevarría Rodríguez nunca "renunció" a este planteamiento.* Como surge de la relación de hechos que hiciéramos, la señora Echevarría no sólo recurrió ante este Tribunal —vía *certiorari*— en revisión de la sentencia emitida por el foro de instancia el 20 de mayo de 1985 sino que solicitó, en tiempo y por ese fundamento en específico, la desestimación de los nuevos pliegos acusatorios radicados contra ella.

Procedimiento Criminal, ante, *goza de una presunción de correc-ción, regularidad y validez.* A esos efectos, véanse: *Rabell Martínez v. Tribunal Superior,* 101 D.P.R. 796, 799 (1973); *Pueblo v. Tribunal Superior,* ante, págs. 459–460. *En consecuencia,* aquel que *cuestiona* esa determinación judicial de causa probable mediante una moción de desestimación bajo la Regla 64(p) de Procedimiento Criminal, ante, y que *pretende* que la misma sea dejada sin efecto, *viene en la obligación de presentar, en una vista señalada a esos efectos, prueba que destruya esa presun-ción de corrección y validez que, repetimos, cobija a la mencio-nada determinación judicial de causa probable.* Véase *Pueblo v. Rivera Alicea,* 125 D.P.R. 37 (1989).

Tenemos, en consecuencia, que en el *supuesto* que le fuera permitido al Estado en el presente caso —*como excepción y con el propósito de evitar un alegado "fracaso de la justicia"*— hacer uso del mecanismo procesal que provee la citada Regla 64(p), el tribunal de instancia *venía en la obligación de exigirle al Ministerio Fiscal la presentación de prueba que destruyera la presunción de corrección y validez que cobijaba la determina-ción judicial de causa probable que había hecho un magistrado en la vista preliminar,* celebrada la misma bajo la citada Regla 23, a base del testimonio que prestara en la misma Juan Orlando Sepúlveda, c/p "Bronco". *Ello así no se hizo.*

Como surge de la relación de hechos que hiciéramos y de la propia "sentencia" emitida por el tribunal de instancia el 20 de mayo 1985, en la vista que dicho foro celebró *las partes se limitaron a argumentar oralmente* la procedencia jurídica del punto en controversia; *esto es, el Estado no presentó prueba alguna tendente a destruir la mencionada presunción de validez.* De hecho, y como igualmente señaláramos anteriormente, *el Estado se limitó a solicitar* que se archivaran las acusaciones en controversia bajo las disposiciones de la citada Regla 64(p) *meramente* a base de la *alegación* de que el testimonio que Juan Orlando Sepúlveda había prestado en la vista preliminar era uno supuestamente perjuro. *Ese hecho no fue objeto de prueba alguna por parte del Estado ni fue dilucidado por el tribunal de*

*instancia.* El mismo, *conforme alegó el Estado,* surgía de un *informe confidencial* que había preparado para el Secretario Rivera Cruz el Lcdo. César Miranda, Subsecretario del Departamento de Justicia; *informe que no fue presentado ante el tribunal de instancia a pesar de la existencia de una orden específica de dicho foro a esos efectos.*

Resulta *jurídicamente inexplicable* que el tribunal de instancia cediera tan fácilmente en este aspecto —esto es, en cuanto al requisito de presentación de prueba bajo la citada Regla 64(p)— ante el Ministerio Público. De la "sentencia" que dicho foro emitiera con fecha de 20 de mayo de 1985 *no* surge la razón para dicha "abdicación". Al así actuar, el tribunal de instancia incumplió con la obligación que le impone la jurisprudencia de este Tribunal, interpretativa de la Regla 64(p) de Procedimiento Criminal, ante. Ante la incuestionable existencia de una *determinación judicial* de causa probable y ante la *presunción de corrección y validez* que cobija a dicha determinación, el foro de instancia, repetimos, *venía en la obligación de exigir la presentación de prueba que destruyera esa presunción de corrección* y, entonces, emitir juicio al respecto; esto es, venía en el deber de *dilucidar judicialmente* la cuestión. *Pueblo v. Rivera Alicea,* ante.

En vista de lo expuesto, somos del criterio que resulta *incuestionable* la conclusión de que el tribunal de instancia cometió *craso error de derecho* el 20 de mayo de 1985 al desestimar, *a petición del fiscal,* las acusaciones en controversia al amparo de las disposiciones de la *Regla 64(p)* de Procedimiento Criminal, ante, por cuanto ello *no* era jurídicamente permisible. *Igualmente obvia resulta ser la conclusión de que lo jurídicamente procedente, esto es, el curso de acción que venía en la obligación de seguir el foro de instancia en ese momento, lo era el mismo que siguió en cuanto a los hermanos Guadalupe; esto es, ordenar el sobreseimiento y archivo —ya sea a petición del Fiscal, ya sea a "instancia propia"— de las acusaciones radicadas contra la señora Echevarría bajo las disposiciones de la citada Regla 247 de Procedimiento Criminal.* Dicha disposición reglamentaria constituía *el único mecanismo procesal asequible*

*al tribunal de instancia* para archivar tanto las acusaciones que pesaban contra la señora Echevarría Rodríguez como contra los hermanos Guadalupe Núñez. Por consiguiente, *y por imperativo de ley*, debe entenderse decretado el archivo de las acusaciones en controversia bajo las disposiciones de la citada *Regla 247* de Procedimiento Criminal.

En consecuencia, *y por mandato expreso de las disposiciones del inciso (d) de la citada Regla 247*, el Estado estaba *estatutariamente impedido* de radicar contra Lydia Echevarría Rodríguez las *nuevas* acusaciones, esto es, las basadas en el testimonio de Francisco (Papo) Newman; situación que, *correcta y oportunamente*, planteó ante el foro de instancia la señora Echevarría Rodríguez. *Son nulas en derecho, por consiguiente, las convicciones que obtuvo el Estado contra la señora Echevarría Rodríguez a base de las referidas acusaciones.*

## VII

Con el propósito transparente de poder sostener y ratificar la opinión que emitiera el pasado 25 de abril de 1991, en la opinión que *hoy* emite —*a posteriori y en desesperación*— el Tribunal enumera una serie de hechos con el obvio fin de convencernos de que el foro de instancia no erró el 20 de mayo de 1985 al desestimar las acusaciones que pesaban contra Lydia Echevarría *sin exigir* prueba que destruyera la presunción de corrección que cobijaba la determinación judicial de causa probable. Conforme la mayoría del Tribunal, de los hechos enumerados surge que ambas partes "estaban contestes" en que el testigo "Bronco" Sepúlveda era un testigo perjuro por lo que, según el Tribunal, el foro de instancia podía, sin más, proceder a ordenar la desestimación de las acusaciones.

La mayoría del Tribunal quisiera hacernos creer que se trata de un caso *común y corriente* —civil o criminal— en el cual, dentro del procedimiento de índole adversativo que caracteriza nuestro sistema de litigación, las partes graciosamente *estipulan o aceptan* la existencia u ocurrencia de un hecho con el propósito

de evitar tener que presentar prueba que demuestre la existencia u ocurrencia del mismo. *Nada más lejos de la realidad.*

En primer lugar, no puede perderse de vista que la supuesta "concordancia" entre las posiciones de las dos (2) partes *era una más aparente que real.* La representación legal de la señora Echevarría Rodríguez, basada en su convencimiento de que ésta era completamente inocente de los cargos radicados contra ella, naturalmente sustentaba la posición de que el testimonio de "Bronco" Sepúlveda era uno perjuro. En consecuencia, sostenía que lo procedente en derecho era el sobreseimiento de las acusaciones *con el propósito último de que ésta fuera exonerada totalmente de las referidas imputaciones.* El Estado, por su parte, sostenía que procedía la desestimación de las acusaciones —por razón de que "Bronco" Sepúlveda era alegadamente un perjuro— *con el fin de encausar nuevamente a la señora Echevarría Rodríguez a base del testimonio de "Papo" Newman.*

En otras palabras, que conozcamos, se trata de una situación *única* en la historia judicial de Puerto Rico. No hay duda que en el pasado ha ocurrido —y, con toda probabilidad, en el futuro ocurrirá— la situación en que el Estado plantea ante el foro judicial la necesidad de que se archiven los cargos criminales que anteriormente había radicado contra un ciudadano. Ello, que sepamos, ha sido *siempre* con el propósito de acusar a otra persona distinta en el futuro por los hechos que, errónea e injustamente, se le imputaron al ciudadano originalmente acusado. *Nunca,* sin embargo, la petición de archivo de cargos por parte del Estado ha sido con el propósito de acusar nuevamente al mismo ciudadano por los mismos hechos, en esta nueva ocasión a base del testimonio de otros testigos.

Dicha *peculiar y única situación procesal,* en adición, tenía el "*agravante*" de que la misma era el resultado directo de una *igualmente única y grave situación institucional* en el Departamento de Justicia de Puerto Rico. Conforme se alegó en el 1985 por el incumbente Secretario de Justicia, Lcdo. Héctor Rivera Cruz, su *antecesor* en el cargo, licenciado Martínez Acosta, había actuado en *forma impropia* al someter originalmente el caso al

foro judicial. La *existencia* de dicha *situación* era, por sí sola, *razón suficiente* para que el foro de instancia le *exigiera* al Estado la *presentación de prueba* con el propósito de poder *descartar la posibilidad* de la presencia de *motivaciones político-partidistas* tras los diferentes y encontrados cursos de acción que, respecto al caso, había seguido el Departamento de Justicia en un período de siete (7) meses de diferencia *y, por consiguiente, descartar la posibilidad de que la señora Echevarría Rodríguez hubiere sido víctima de tan impropia actuación.*

¿Cuál debió ser la actitud del foro de instancia ante *esta única e inaudita situación en la historia judicial de Puerto Rico*? ¿Erró dicho foro al limitarse a aceptar y declarar con lugar la solicitud de desestimación del Estado *sin exigirle* a éste el desfile de prueba que le permitiera judicialmente dilucidar la verdad fáctica y jurídica de la referida situación?

No hay duda que, como regla general y de ordinario, los tribunales no cuestionan las solicitudes de archivo y sobreseimiento que respecto a cargos criminales pendientes les hace el Estado; ello por razón de que es precisamente el Estado sobre quien, de manera principal, recae la grave responsabilidad de encausar criminalmente a los ciudadanos. *Dicho curso de acción, sin embargo, no era el procedente en el presente caso.* No se trataba, como hemos visto, de una situación común y corriente; *todo lo contrario, era una situación única en la historia judicial puertorriqueña.*

La situación, en síntesis, *obligaba* al foro de instancia a ser *especialmente cuidadoso, suspicaz y exigente* en la tramitación y disposición de la solicitud de desestimación radicada por el Estado. *Ciertamente había razones de sobra para así actuar.* No obstante todas las anteriormente reseñadas, *basta con señalar* que conforme el propio licenciado Rivera Cruz, el anterior Secretario del Departamento de Justicia había actuado impropiamente —escasamente siete (7) meses antes— al someter originalmente el caso en el año 1984. *Si el entonces Secretario de Justicia había sido alegadamente capaz de actuar así, ¿qué garantías tenía el foro judicial en el 1985 para confiar en el*

*departamento y su nuevo Secretario? ¿Qué razones y fundamentos existían para que el foro judicial confiara más en el Secretario Rivera Cruz que en el ex Secretario Martínez Acosta?* Las contestaciones a las anteriores interrogantes parecen ser obvias.

En consecuencia —*y en vista de las circunstancias específicas del presente caso*— no tenemos duda alguna sobre el hecho de que el tribunal de instancia *venía en la obligación de exigir la presentación de prueba* con el propósito de *judicialmente determinar* si procedía o no dejar sin efecto la determinación de causa probable que se había hecho por tribunal competente a base del testimonio del testigo "Bronco" Sepúlveda. *No lo hizo.* Por consiguiente, su actuación al desestimar las acusaciones bajo la Regla 64(p) de Procedimiento Criminal, ante, fue una *errónea* en derecho. Como hemos expresado anteriormente, no habiéndose presentado prueba que destruyera la presunción de corrección que cobijaba la determinación de causa probable, *por imperativo de ley* la única vía procesal al alcance del foro de instancia que le permitía ordenar el sobreseimiento de las acusaciones lo era la citada Regla 247 de Procedimiento Criminal.

## VIII

Estamos conscientes del hecho de que a algunas personas les podrá parecer inaceptable, y dura, la aplicación al presente caso del mandato contenido en el inciso (d) de la citada Regla 247 a los efectos de que el "sobreseimiento decretado de acuerdo con esta regla impedirá un nuevo proceso por los mismos hechos", y las consecuencias que, en relación con el caso, dicha aplicación conlleva. Ello resulta ser comprensible. Después de todo, se trata de unos hechos delictivos particularmente macabros.

Aparte del hecho de que la *Asamblea Legislativa,* al expresamente legislar y establecer el inciso (d) de la citada Regla 247, *así lo entendió conveniente y procedente para nuestro sistema de justicia criminal,* un análisis cuidadoso de la situación demuestra que *dicho curso de acción* no sólo era, en vista de las *circunstancias presentes* en la misma, el *único jurídicamente procedente*

sino que el mismo resulta ser *el que realmente responde al sentido básico de justicia* que debe *guiar* todas las decisiones de los funcionarios que tenemos la delicada, difícil y noble encomienda de aplicar la ley y de impartir justicia en esta jurisdicción. *Como es sabido, venimos en la incuestionable obligación de hacerlo no sólo en forma jurídicamente correcta sino que de manera objetiva e imparcial.* Ello *requiere* que lo hagamos sin tomar en cuenta nuestras creencias personales y de qué personas se trata. Tenemos, *en adición,* la igualmente *ineludible obligación* de exigirle a toda persona que de alguna manera adviene o entra en contacto con el proceso judicial —fiscal, abogado, jurado, testigo, acusado, parte— *que se comporte conforme las obligaciones, responsabilidades y exigencias que le impone, o requiere de él, nuestro ordenamiento jurídico.* De dichas obligaciones y responsabilidades, naturalmente, *no está excluido el Secretario de Justicia ni el departamento que dicho funcionario dirige.*

*No sabemos si son o no ciertas las imputaciones que le hiciera el Secretario Rivera Cruz a su antecesor en el cargo, el licenciado Martínez Acosta,* a los efectos de que dicho funcionario y el departamento que entonces éste dirigía realizaron en forma poco profesional una investigación "deficiente y fragmentada", a base de la cual comparecieron al foro judicial en la etapa de determinación de causa probable para arresto de manera "prematura y precipitada", y a base de un testimonio perjuro. *No estamos en condiciones de pasar juicio sobre ello; no tenemos los elementos de juicio suficientes y necesarios para así hacerlo.* Irónicamente, el Secretario Rivera Cruz y el Departamento de Justicia *son los responsables de esta situación.* Como expresáramos anteriormente, el Ministerio Público incumplió con la obligación que le impone nuestra jurisprudencia a todo aquel que pretende que se desestime un pliego acusatorio —basado el mismo en una determinación judicial de causa probable— bajo las disposiciones de la citada Regla 64(p) de Procedimiento Criminal, al no presentar prueba alguna para destruir la presunción de corrección que cobija a dicha determinación.

Sí sabemos, sin embargo, que el Departamento de Justicia de Puerto Rico es un ente "único y contínuo" y que las acciones y determinaciones que en un momento determinado toman los funcionarios que en ese momento dirigen los destinos del departamento *obligan a los sucesores de dichos funcionarios.* De la misma manera que el sucesor del Secretario Rivera Cruz tendrá que, en el futuro, responder por las acciones y determinaciones —correctas o incorrectas, prudentes o irrazonables, intencionales o negligentemente realizadas— que ha tomado el licenciado Rivera Cruz durante los pasados años, éste, y el departamento que él en estos momentos dirige, responden por las acciones —buenas o malas— del licenciado Martínez Acosta.

De ello no ser así, el resultado sería un sistema de gobierno inmanejable, desacreditado y sumido, contínuamente, en un caos jurídico. El pueblo, las instituciones, los ciudadanos que contratan o que de alguna forma entran en contacto con el Gobierno, tienen *el derecho a esperar* que los funcionarios de la Rama Ejecutiva del Gobierno actúen responsablemente; *pero, sobre todo, tienen el derecho a exigir que el Gobierno responda por esas actuaciones y los compromisos que ha contraído.* Del Poder Ejecutivo no estar en disposición de así actuar, la Rama Judicial tiene la *ineludible obligación* de hacer que dicha Rama Ejecutiva responda por las decisiones que ha tomado en el pasado.

En lo referente al caso ante nuestra consideración, *únicamente existen dos (2) posibles alternativas*: (1) que el ex Secretario Martínez Acosta y el Departamento de Justicia incurrieron en conducta impropia al *originalmente* someter el caso en el año de 1984; esto es, que son ciertas las imputaciones que hiciera el Secretario Rivera Cruz en el año de 1985, o (2) que dichas imputaciones no son ciertas.

*En cualesquiera de las dos (2) alternativas, el resultado jurídico es el mismo.* Ello así por cuanto de ser cierto que en el año 1984 el Departamento de Justicia —actuando de manera poco profesional, intencionalmente sometió el caso para determinación de causa probable para arresto en forma prematura y precipitada contra Lydia Echevarría, a base de un testimonio perjuro—

*estaríamos frente a una actuación que constituye conducta impropia por parte del Ministerio Fiscal que amerita, y justifica, la aplicación inexorable del mandato estatutario, contenido en el inciso (d) de la Regla 247 de Procedimiento Criminal, ante,* el cual impide la radicación de nuevas acusaciones.

Por el contrario, *de resultar que las imputaciones que de conducta impropia le hiciera el Secretario Rivera Cruz a su antecesor no son ciertas,* estaríamos frente a la igualmente inaudita situación de un Secretario de Justicia que, obviamente por motivos político-partidistas, falsamente le ha imputado a su antecesor haber incurrido en conducta impropia. Esto es, tendríamos que la Sra. Lydia Echevarría ha sido *la víctima* de una pugna, política personal, entre dos (2) Secretarios del Departamento de Justicia provenientes de dos (2) administraciones de gobierno distintas. En otras palabras, *igualmente estaríamos ante la repugnante situación de conducta impropia por parte del Departamento de Justicia de Puerto Rico que plenamente justifica y amerita la aplicación de la Regla 247(d)* de Procedimiento Criminal, ante. Ello así por cuanto si el testimonio de "Bronco" Sepúlveda no era uno perjuro, la persona que efectivamente cometió perjurio lo fue "Papo" Newman; testimonio a base del cual finalmente se sometió a juicio a Lydia Echevarría Rodríguez y a David López Watts.

*De manera, pues, que en última instancia* —y para la correcta apreciación de la situación— *realmente resulta inmaterial que sean ciertas o no las imputaciones que le hiciera el Secretario Rivera Cruz a su antecesor en el cargo, el licenciado Martínez Acosta.* Dicho de otra forma, es *impertinente* cuál es el testigo —"Bronco" Sepúlveda o "Papo" Newman— que dice la verdad; esto es, da lo mismo que "Bronco" sea el perjuro o que lo sea "Papo".

*Lo determinante es que el Departamento de Justicia* —bajo *una u otra alternativa*— *incurrió en conducta impropia, actuación del Estado que justifica plenamente, repetimos, la utilización en el presente caso de la Regla 247 de Procedimiento Criminal, ante, y la aplicación del impedimento estatutario*

*contenido en el inciso (d) de la citada regla.* En realidad *no importa* cuál de los Secretarios haya sido el que incurrió en conducta impropia: *el Departamento de Justicia —esto es, el Estado— responde jurídicamente por la actuación de ambos.*

El foro judicial, y este Tribunal en específico, *no* debe premiar al Poder Ejecutivo por tan impropia conducta *como tampoco* puede, haciéndose de la vista larga e ignorándola, ser *cómplice de la misma.* El camino a seguir —*el único justo y jurídicamente correcto*— resulta ser obvio y transparente: decretar, *por los fundamentos expresados en la Parte VI de esta ponencia,* que el Estado estaba *estatutariamente impedido* de radicar nuevas acusaciones contra la señora Echevarría Rodríguez; razón por la cual las convicciones contra ella obtenidas por el Estado, a base de dichas acusaciones, *resultan ser nulas en derecho.*

IX

Pero, *hay más.* La apelante Echevarría Rodríguez alega, mediante sus señalamientos de error cuarto y décimoprimero, *que la publicidad excesiva que recibió el caso impidió que ella recibiera un juicio justo e imparcial;* publicidad que, alega la señora Echevarría Rodríguez, fue provocada por el propio Estado. A esos efectos, trajo ante la atención del Tribunal *innumerables* recortes de periódico, relativos dichos informes periodísticos no sólo a la etapa de investigación del caso sino a la fase procesal del mismo.

El tribunal, luego de hacer un breve resumen de la jurisprudencia aplicable, rechazó tajantemente este planteamiento expresando que "no encuentra mérito alguno" en dichos señalamientos de error; ello, principalmente, en vista de que *"no* [percibe] un carácter realmente inflamatorio contra la acusada en los titulares periodísticos señalados por la apelante en su recurso *y, menos aún,* cómo la cobertura noticiosa del caso pudo afectar a los miembros del Jurado en su función juzgadora". (Énfasis suplido.) *Pueblo v. Echevarría Rodríguez I,* ante, págs. 329–330. Por otro lado, sostiene la opinión mayoritaria que la apelante Echevarría

Rodríguez no cumplió con la obligación que le impone la jurisprudencia de "probar la irregularidad alegada y que la misma afectó sustancialmente el resultado obtenido", esto es, los veredictos contra ella rendidos por el Jurado. Íd., pág. 328.

No hay duda del hecho de que en el mundo moderno en el cual hoy nos desenvolvemos —donde, *afortunadamente*, contamos con una prensa activa y vigorosa, y, *sobre todo*, dispuesta no sólo a informar sino que a investigar las situaciones que son de interés público para nuestra ciudadanía— un Jurado imparcial no necesariamente significa uno totalmente ignorante de los hechos que se le imputan a un acusado en particular. En otras palabras, el mero hecho de que un miembro de la comunidad haya escuchado en la radio, o leído en la prensa escrita, sobre unos hechos delictivos *no* descualifica a éste para servir como jurado en el proceso criminal relativo a dichos hechos delictivos. La pregunta a hacerse es si ese previo conocimiento le *impide* a este ciudadano evaluar objetivamente la prueba que se presente durante el proceso y rendir un veredicto justo e imparcial. *Irvin v. Dowd*, 366 U.S. 717, 723 (1961).

El Tribunal Supremo de los Estados Unidos ha expresado que los tribunales apelativos, al evaluar un planteamiento sobre violación del debido proceso de ley, basado el mismo en que la *excesiva publicidad* que recibió el caso en controversia impidió que el acusado tuviera un juicio justo e imparcial, deben exigir de los acusados que demuestren la existencia de, por lo menos, *una* de la siguientes tres (3) situaciones: (1) que el *juicio* fue conducido en una "atmósfera de circo", *Sheppard v. Maxwell*, 384 U.S. 333 (1966); *Estes v. Texas*, 381 U.S. 532 (1965); (2) que un examen de los procedimientos de selección de los señores del Jurado (*voir dire*) demuestra que éstos efectivamente estaban prejuiciados y que, en consecuencia, no estaban en condiciones de rendir un veredicto justo e imparcial, *Patton v. Yount*, 467 U.S. 1025 (1984); *Dobbert v. Florida*, 432 U.S. 282 (1977), o (3) que la comunidad estaba tan *saturada* con la publicidad que el asunto había recibido que el foro judicial debe *presumir* el prejuicio, *Murphy v.*

*Florida*, 421 U.S. 794, 803 (1975); *Rideau v. Louisiana*, 373 U.S. 723 (1963).

De entrada, no tenemos otra alternativa que rechazar, con incredulidad, la aseveración de la mayoría del Tribunal a los efectos de que *no pueden percibir* "un carácter realmente inflamatorio contra la acusada en los titulares periodísticos . . . y, menos aún, cómo la cobertura noticiosa del caso pudo afectar a los miembros del Jurado en su función juzgadora". *Pueblo v. Echevarría Rodríguez I*, ante, págs. 329–330. Dicha afirmación es tan manifiestamente errónea, que verdaderamente sorprende que el Tribunal se haya atrevido a hacerla.

Como expresáramos en la opinión disidente que emitiéramos el pasado 25 de abril, debido a la *personalidad pública* del Sr. Luis Vigoreaux como miembro de la farándula local, y las circunstancias que rodearon su muerte, la misma fue *lamentada y sentida* por toda la ciudadanía puertorriqueña. Su deceso, las *especulaciones* que sobre el mismo públicamente se comenzaron a hacer, convirtieron el "caso Vigoreaux" en una *"causa célebre"* que capturó la imaginación pública. Ello fue suficiente para que los medios noticiosos del País, conscientes de la avidez que sentía nuestra ciudadanía por conocer cualquier detalle en relación con dicha muerte, le dieran un despliegue pocas veces visto a la situación.

Si a ello se hubiera limitado el asunto, quizás el Tribunal tendría razón al expresar que no comprende cómo la cobertura noticiosa "pudo afectar a los miembros del Jurado" que finalmente intervinieron en el caso. *Pueblo v. Echevarría Rodríguez I*, ante, pág. 330. *El Estado, sin embargo, se encargó de irremediablemente viciar el procedimiento.* Nos referimos, naturalmente, a los *hechos que precedieron al arresto* de la señora Echevarría Rodríguez, *al arresto en sí* de ésta y a los *sucesos posteriores* a ello.

*¿Quién podrá olvidar la lamentable escena de todo un señor Secretario de Justicia* —el licenciado Martínez Acosta— *arrestando a la señora Echevarría Rodríguez el día 3 de septiembre de 1984 y, luego, corriendo con ésta hacia su vehículo oficial para*

*dirigirse con ella hacia el Centro Judicial de Hato Rey?* ¿*Quién todavía no recuerda aquella multitud, enardecida y furiosa, golpeando los vehículos oficiales, a la entrada y salida del referido Centro Judicial, gritando obscenidades contra la señora Echevarría Rodríguez y que, en un momento determinado, se temió pudiera atacar a ésta?* De dichas escenas —*captadas en todo su "esplendor" por la televisión puertorriqueña y transmitidas a todo Puerto Rico*— tomamos conocimiento judicial. Véase Regla 11 de Evidencia de 1979 (32 L.P.R.A. Ap. IV).

¿*Quién es el responsable de tal violación de derechos constitucionales?* Ciertamente no la prensa puertorriqueña; después de todo, no debemos olvidar que la prensa meramente se limita a reproducir y reportar la situación fáctica que resulta de interés para la ciudadanía. Desafortunadamente para nuestro sistema de justicia, *el responsable de ello lo fue el Departamento de Justicia,* esto es, el Estado, el cual no sólo le dio *aviso previo* a la prensa del País sobre lo que se proponía hacer, sino que *fomentó y ayudó* a la ocurrencia de dicha lamentable situación, la cual degeneró en un circo publicitario. Dicha actuación gubernamental —la cual obviamente tuvo el propósito de adelantar los intereses personales de los funcionarios que dirigían entonces los destinos del Departamento de Justicia, y no los de alcanzar cumplidamente los fines de la justicia— *constituye una página negra en la historia constitucional puertorriqueña relativa a la garantía de los derechos civiles de nuestros ciudadanos.*

Toda esa *tragedia constitucional* se renovó, *y acrecentó,* con la *reinvestigación del caso* que llevó a cabo el Departamento de Justicia, reinvestigación que supuestamente se hizo necesaria precisamente *por culpa* del referido Departamento, esto es, debido a la *conducta impropia* en que alegadamente incurrieron los funcionarios que dirigieron los destinos de dicha dependencia gubernamental hasta finales de 1984. Nuevamente los titulares, nuevamente las especulaciones de toda clase e índole. ¿*El resultado de ello?* Nuevamente Lydia Echevarría Rodríguez se convierte en noticia de primera plana por tiempo indefinido. Como evidencia incuestionable de lo anteriormente señalado, la apelante

Echevarría Rodríguez sometió, como anejo del alegato que ante este Tribunal ella radicara, *un listado* de cuatrocientos noventa y dos (492) *titulares de periódico* que se publicaron en el País en el período aproximado de quinientos (500) días que transcurrieron entre la fecha en que originalmente se sometió el caso contra la señora Echevarría Rodríguez y la fecha del comienzo del juicio en su fondo. No debe haber duda, en consecuencia, sobre el hecho de que la comunidad puertorriqueña *quedó saturada* con la publicidad excesiva que recibió el "caso Vigoreaux". *Murphy v. Florida,* ante.

Reconocemos que todo lo anteriormente señalado necesariamente *no* implica, *ni* es prueba de, que *el juicio en sí* fue uno viciado; esto es, que la señora Echevarría, no obstante haber sido *víctima de una violación crasa de sus derechos* en la etapa pre-juicio, todavía tenía *la obligación de demostrar* que esta situación le privó de obtener un juicio justo e imparcial por parte de los señores del Jurado que intervinieron en el mismo. *El resultado final del caso, sin embargo, la relevó de esa obligación.*

Evidencia *fehaciente* del perjuicio sufrido por la señora Echevarría Rodríguez como consecuencia de la publicidad excesiva de que fue objeto el caso —causada y promovida, *no debemos olvidar,* dicha publicidad inflamatoria y dañina por el propio Departamento de Justicia de manera impropia— *la constituye, sin duda, los veredictos inconsistentes que rindieron los señores del Jurado en el caso, en relación con la acusación por el delito de asesinato en primer grado que pesaba contra ambos apelantes.*

Recordaremos que, aun cuando el Jurado que intervino en el caso *condenó* a Echevarría Rodríguez por el delito de asesinato en primer grado, dicho Jurado *absolvió* al apelante López Watts del referido delito. Dicha situación es objeto del sexto señalamiento de error por parte de la apelante Echevarría Rodríguez. El Tribunal, nuevamente de manera superficial, se limita a señalar en su opinión mayoritaria *original* que "nuestra jurisprudencia sobre veredictos inconsistentes se ha reafirmado en cuanto a que

no es necasario demostrar consistencia lógica entre los mismos". *Pueblo v. Echevarría Rodríguez I*, ante, pág. 338.

No hay duda alguna que la jurisprudencia de este Tribunal efectivamente es a esos efectos. *Pueblo v. Cortés Calero*, 99 D.P.R. 679 (1971); *Pueblo v. Cabán Torres*, 117 D.P.R. 645 (1986); *Pueblo v. Gómez Nazario*, 121 D.P.R. 66 (1988). La mayoría del Tribunal, sin embargo, *pasa por alto la verdadera importancia de la inconsistencia en los veredictos rendidos por el Jurado en el presente caso.* Dicha inconsistencia, repetimos, constituye *la prueba del perjuicio sufrido* por la señora Echevarría Rodríguez *como consecuencia* de la *publicidad excesiva* de que ella fue objeto.

Un examen del récord demuestra que el testimonio prestado durante el juicio por el testigo Francisco (Papo) Newman es el *único* que conecta a la apelante Echevarría Rodríguez con el asesinato cometido; esto es, como alegada autora intelectual del mismo. Este mismo testigo declaró que él y López Watts fueron las personas *que físicamente llevaron a cabo el asesinato de Luis Vigoreaux.* De hecho, Newman declaró que López Watts fue la persona que originalmente *le infligió varias heridas mortales* al señor Vigoreaux, utilizando para ello un "punzón" que luego tiró a un pastizal. Véanse las págs. 314–315 de la opinión mayoritaria emitida el 25 de abril de 1991. *¿Como es posible, entonces, que el Jurado absolviera a López Watts del asesinato imputado y condenara a Echevarría Rodríguez actuando a base del mismo testimonio?*

Si bien es cierto que un Jurado, quizás a veces "olvidándose indebidamente del derecho trasmitídole en las instrucciones y, quizás, inspirado por un excesivo sentido de clemencia", *Pueblo v. Gómez Nazario*, ante, pág. 75, puede favorecer a un acusado sobre otro y rendir, en consecuencia, veredictos inconsistentes respecto a éstos, *no hay duda de que tenemos que presumir que el Jurado de ordinario actúa en forma lógica, responsable y razonable.* Ello no puede ser de otra manera por cuanto de la presunción ser la contraria, *no* podría sostenerse la institución del

Jurado; la Asamblea Legislativa la hubiera eliminado hace mucho tiempo.

*¿Qué explicación razonable puede haber en el presente caso para la actuación inconsistente?* Ciertamente tenemos que descartar la alternativa de que los señores del Jurado le "cogieran pena" a López Watts, o la de que actuaron de manera irresponsable, o la de que —como *"ingenuamente"* alega *hoy* el Tribunal— el veredicto inconsistente fue el producto de un coraje del Jurado por razón de que el Estado no le concedió a López Watts inmunidad al igual que a Newman. *A nuestro juicio, sólo emerge una explicación lógica y razonable: el prejuicio causado por la publicidad excesiva en relación con la señora Echevarría Rodríguez.* En otras palabras, *la apelante Echevarría Rodríguez no incumplió* —como erróneamente sostiene el tribunal al rechazar su señalamiento de error respecto a publicidad excesiva— *con la obligación que le impone la jurisprudencia de demostrar el perjuicio sufrido como consecuencia de la publicidad dañina que contra ella fomentó el propio Departamento de Justicia de Puerto Rico.*

Por el contrario, el *perjuicio sufrido* por la señora Echevarría Rodríguez *quedó plenamente demostrado y constituye él mismo fundamento suficiente en derecho para revocar las convicciones de la señora Echevarría Rodríguez.* En otras palabras, aun cuando nuestra jurisprudencia es a los efectos de que, *desde un punto de vista técnico*, los veredictos inconsistentes pueden ser sostenidos, *ello no es óbice* para que ordenemos la revocación de las convicciones decretadas contra la señora Echevarría Rodríguez ya que *la inconsistencia* en los veredictos rendidos en el presente caso *constituye evidencia fehaciente del prejuicio del Jurado contra la señora Echevarría Rodríguez,* causado el mismo por la *publicidad excesiva* de que fue objeto el caso contra ella radicado. *Cuando menos,* tenemos *base suficiente* para *presumir* dicho prejuicio y perjuicio. *Murphy v. Florida,* ante; *Rideau v. Louisiana,* ante. Ello resulta ser tan obvio que salta a la vista y hiere la retina. *In re Roldán González,* 113 D.P.R. 238, 242 (1982).

Sin embargo, *todavía hay más.*

## X

Ambos apelantes plantean que las convicciones contra ellos decretadas a nivel de instancia deben ser revocadas por razón de que el testimonio prestado durante el proceso por el testigo Franciso (Papo) Newman, *único* testigo de cargo que los relaciona o conecta con la muerte del Sr. Luis Vigoreaux, es uno "indigno de crédito".

Resulta, pues, sumamente pertinente lo expresado por este Tribunal en *Pueblo v. Cabán Torres*, ante, págs. 652–655, a los efectos de que:

> . . . [E]s principio fundamental de nuestro sistema de derecho que la culpabilidad de un imputado de delito *debe ser probada más allá de duda razonable. Pueblo* v. *Ortiz Morales*, 86 D.P.R. 456 (1962); *Pueblo* v. *Carrasquillo Carrasquillo*, 102 D.P.R. 545 (1974). El Ministerio Fiscal no cumple con ese requisito presentando prueba que meramente sea "suficiente", esto es, que "verse" sobre todos los elementos del delito imputado; *se le requiere que la misma sea "suficiente en derecho".* Ello significa que la evidencia presentada, "además de suficiente, *tiene que ser satisfactoria,* es decir, *que produzca certeza o convicción moral en una conciencia exenta de preocupación"* o en un *ánimo no prevenido. Pueblo* v. *Carrasquillo Carrasquillo*, ante, pág. 552. Esa "insatisfacción" con la prueba es lo que se conoce como "duda razonable y fundada". *Pueblo* v. *Toro Rosas*, 89 D.P.R. 169 (1963).
>
> .    .    .    .    .    .    .    .
>
> Como es sabido, la apreciación que hace un juzgador de la evidencia desfilada durante un proceso judicial criminal *es una cuestión mixta de hecho y de derecho.* Es así por cuanto el análisis que de la prueba presentada se realiza "pone en movimiento, *además de la experiencia del juzgador,* su conocimiento del Derecho para así llegar a una solución justa de la controversia". *Pueblo* v. *Carrasquillo Carrasquillo*, ante, pág. 552.
>
> Es por ello que la determinación que ha hecho el juzgador de los hechos a nivel de instancia a los efectos de que la culpabilidad del imputado de delito ha quedado establecida más allá de duda razonable *es una que es revisable en apelación* como "cuestión de derecho". *Pueblo* v. *Serrano Nieves*, 93 D.P.R. 56 (1966); *Pueblo* v. *Pagán Díaz*, 111 D.P.R. 608 (1981).

Es norma jurisprudencial trillada que esa "determinación de culpabilidad" que hace el juzgador de los hechos a nivel de instancia *es merecedora de gran deferencia por parte del tribunal apelativo.* El fundamento o base en que se apoya la referida norma es obvio: dicho juzgador es el que, de ordinario, *está en mejor posición para aquilatar la prueba testifical* ya que fue el que oyó y vio declarar a los testigos. Como expresáramos en *Ortiz* v. *Cruz Pabón,* 103 D.P.R. 939, 947 (1975):

". . . y es que no sólo habla la voz viva. También hablan las expresiones mímicas: el color de las mejillas, los ojos, el temblor o consistencia de la voz, los movimientos, el vocabulario no habitual del testigo, son otras tantas circunstancias que deben acompañar el conjunto de una declaración testifical y sin embargo, *todos estos elementos se pierden en la letra muda de las actas,* por lo que se priva al Juez de otras tantas circunstancias que han de valer incluso más que el texto de la declaración misma para el juicio valorativo que ha de emitir en el momento de fallar; *le faltará el instrumento más útil para la investigación de la verdad: la observación . . . ."* (Énfasis suplido.)

Es por ello que este Tribunal ha expresado en reiteradas ocasiones *que, de ordinario, no intervendremos con el veredicto condenatorio emitido* por un jurado o el fallo inculpatorio de un magistrado *en "ausencia de pasión, prejuicio o error manifiesto"* en la apreciación que de la prueba realizaron los mismos. *Pueblo* v. *Millán Meléndez,* 110 D.P.R. 171 (1980); *Pueblo* v. *López Pérez,* 106 D.P.R. 584 (1977); *Pueblo* v. *Borrero Robles,* 113 D.P.R. 387 (1982). Debe quedar claro, en adición, que la responsabilidad de demostrar que procede la intervención con el fallo o veredicto condenatorio emitido a nivel de instancia recae, de manera principal, sobre el apelante.

*Todo lo anteriormente expresado, sin embargo, no significa que esa determinación de culpabilidad realizada por el juzgador de los hechos constituye una barrera insalvable.* En el pasado, en ocasiones en que un análisis ponderado de la prueba desfilada ante el foro de instancia nos ha producido duda razonable y fundada sobre si la culpabilidad del apelante ha quedado establecida más allá de duda razonable, *no hemos vacilado* en dejar sin efecto un fallo condenatorio. *Pueblo* v. *Carrasquillo Carrasquillo,* ante; *Pueblo* v. *Pagán Díaz,* ante; *Pueblo* v. *Meléndez Rolón,* 100 D.P.R. 734 (1972); *Pueblo* v. *Falú Fuentes,* 102 D.P.R. 809 (1974); *Pueblo* v. *Sanabria Pérez,* 113 D.P.R. 694 (1983); *Pueblo* v. *Álamo Álamo,* 116 D.P.R. 673 (1985). Y es que, como expresáramos en *Pueblo* v. *Carrasquillo*

*Carrasquillo*, ante, págs. 551–552, hasta tanto "se disponga de un método infalible para averiguar sin lugar a dudas dónde está la verdad, su determinación tendrá que ser una cuestión de conciencia. *Ese deber de conciencia no para en el fallo del tribunal sentenciador. Nosotros también tenemos derecho a tenerla tranquila".* (Énfasis suplido y en el original, y escolio omitido.)

Con lo anteriormente expresado en mente, analizamos y evaluamos no sólo la *declaración en sí* prestada por Francisco (Papo) Newman durante el proceso celebrado a nivel de instancia, *sino las circunstancias que rodearon, y en que se produjo, la misma.* En lo referente al mencionado testimonio, procede que se enfatice que un examen del *voluminoso récord del caso* ante nuestra consideración revela, en primer lugar, que el testimonio de Newman era uno *indispensable y esencial* para el Estado. *Esto es, sin el mismo, el Estado "no tenía caso alguno" contra ninguno de los dos (2) apelantes.* En segundo lugar, un análisis *del testimonio en sí* prestado por Newman demuestra, no hay duda, que el mismo versa sobre, o establece, todos y cada uno de los elementos de los delitos que el Estado le imputó a los apelantes. *Ello no obstante,* y en cumplimiento de lo establecido por nuestra jurisprudencia, *venimos en la obligación de determinar si el mismo es uno "satisfactorio en derecho". Pueblo v. Cabán Torres,* ante. En otras palabras, si dicho testimonio demuestra la culpabilidad de los apelantes Echevarría Rodríguez y López Watts "más allá de duda razonable". *Pueblo v. Ortiz Morales,* 86 D.P.R. 456 (1962). *Entendemos que no; veamos por qué.*

De entrada, tenemos que confesar que no podemos sustraernos de la *fundada impresión* a los efectos de que la investigación de la muerte del Sr. Luis Vigoreaux fue una "víctima" más, y un vivo ejemplo, del excesivo —y, en ocasiones, opresivo— *clima de contínua politización que desafortunadamente se vive en nuestro País.* Como surge de la relación de hechos, la muerte del señor Vigoreaux ocurrió el día 17 de enero de 1983. La misma, por las razones anteriormente expresadas, capturó la atención de nuestra ciudadanía. No obstante el comprensible, y obvio, interés de las

agencias del orden público encargadas de investigar esta clase de situación, el esclarecimiento del caso resultó ser una tarea sumamente ardua y difícil durante un período de año y medio. Sin embargo, *como por arte de magia y apenas a dos (2) meses plazo de la celebración de las elecciones generales de 1984*, el 2 de septiembre de ese año el Estado finalmente "esclarece" el caso; hecho que, no hay duda, resultaba políticamente conveniente para el partido político entonces en el poder. Como resultado de dicho "esclarecimiento", se acusa a Lydia Echevarría Rodríguez y a los hermanos Guadalupe Núñez del asesinato a base del testimonio de Juan Orlando Sepúlveda, c/p "Bronco".

El partido de gobierno pierde las elecciones generales de 1984. En el mes de enero de 1985, comienza a gobernar en nuestro País una nueva administración de gobierno. Resulta, en estos momentos, sumamente pertinente señalar que, *inclusive antes de tomar oficialmente posesión de su cargo*, el futuro incumbente en la Secretaría de Justicia, Lcdo. Héctor Rivera Cruz, ya le estaba imputando a su antecesor en el cargo que había desempeñado el mismo conforme a criterios político-partidistas; esto es, en forma no profesional. Según surge de la edición del lunes 14 de enero de 1985 del extinto periódico *El Mundo*, pág. 4, el licenciado Rivera Cruz —en obvia referencia, entre otros, al ex Secretario Martínez Acosta— expresó, en lo pertinente, que:

> "En este país lo que sucede es que se ha tenido una experiencia amarga en los últimos años *de quienes han administrado el Departamento de Justicia*" . . . .
>
> "Ha habido funcionarios competentes, *pero ha habido otros que no han cumplido como secretarios de Justicia* y algunos legisladores y personas en este país piensan que las personas que van a ir al departamento harán lo que algunos han estado haciendo últimamente: *no cumplir con el mandato constitucional y acomodar las investigaciones a criterios personales y político partidistas*" . . . . (Énfasis suplido.)

Cabe preguntarse: ¿Cómo es posible que antes de que tomara posesión del cargo de Secretario de Justicia —esto es, *antes* de contar con información oficial sobre las investigaciones y otras labores que había llevado a cabo su antecesor Martínez Acosta—

el licenciado Rivera Cruz ya tuviera el conocimiento, y convencimiento, pleno de que el licenciado Martínez Acosta había desempeñado su cargo conforme a "criterios personales y político partidistas . . ."? L.A. Cabán, Sin "amarres" con partidos, El Mundo, San Juan, 14 de enero de 1985, pág. 4. La "agenda" era clara. No debió sorprender a nadie, en consecuencia, el hecho de que el Departamento de Justicia efectivamente llevara a cabo una reinvestigación del caso Vigoreaux y el mismo "fuera esclarecido", *por segunda ocasión y esta vez a base del testimonio de otro testigo*, en los primeros días del mes de abril de 1985; esto es, a escasamente sesenta (60) días de haber asumido el cargo de Secretario de Justicia el licenciado Rivera Cruz. *Si sorprendente y sospechoso resulta ser el hecho de que el licenciado Martínez Acosta "esclareciera" el caso Vigoreaux a dos (2) meses plazo de la celebración de las elecciones generales de 1984, igualmente sorpresivo y sospechoso resulta ser que el licenciado Rivera Cruz "esclareciera" el caso a los dos (2) meses de haber tomado posesión del cargo que hoy todavía ocupa.*

Ello no obstante, examinamos el "testimonio" de Franciso (Papo) Newman. *De entrada*, resulta importante destacar que se trata *del testimonio de un autor, o coautor, de los hechos delictivos que se le imputaron a los apelantes Echevarría Rodríguez y López Watts*. Es de rigor, en consecuencia, resaltar las disposiciones al respecto de la *Regla 156* de Procedimiento Criminal, 34 L.P.R.A. Ap. II, la cual establece, en lo pertinente, que la declaración de tal testigo "será *examinad[a] con desconfianza* y se le dará el peso que estime el juez o el jurado luego de examinarlo *con cautela* a la luz de toda la evidencia presentada en el caso". (Énfasis suplido.)[11]

---

[11] De hecho, y antes de que la mencionada disposición reglamentaria fuera enmendada por la Ley Núm. 208 de 23 de julio de 1974, nuestra jurisprudencia establecía —*sabiamente, a nuestro entender*— que la *sola* declaración de un coautor no corroborada por alguna otra prueba que, por sí misma y sin tomar en consideración el testimonio del coautor, tienda a demostrar la relación del acusado con la comisión del delito que se le imputa, *no era suficiente para sostener la convicción del acusado.* Véase *Pueblo v. García Delgado*, 93 D.P.R. 797 (1966).

Por otro lado, y dados los hechos particulares del caso ante nuestra consideración, *resulta igualmente importante enfatizar el hecho adicional de que se trata de una persona*, coautor de los hechos, *que consiente a servir como testigo de cargo bajo la promesa, y concesión, por parte del Estado de inmunidad absoluta*. Ello, naturalmente, significa que no importa los actos criminales que esta persona admita haber cometido, *el Estado está impedido de procesarlo criminalmente*.

Procede, en consecuencia, que nos preguntemos *si ese hecho* —el de que Newman es un coautor declarando bajo un manto absoluto de inmunidad— *es o no un factor a considerarse respecto a la credibilidad que pueda merecer su testimonio*. No hay duda de que la contestación a dicha interrogante *tiene que ser en la afirmativa*. La razón principal para ello lo constituye el hecho de que *la experiencia demuestra que el testimonio de un coautor de unos hechos, que declara bajo inmunidad, es tan confiable y veraz como confiable, íntegro y honesto sea su "interrogador"*; esto es, la persona que lo convenció, a cambio de concederle inmunidad, para que prestara declaración en contra de los otros alegados autores del delito. Ello así por cuanto la concesión de la "gracia" de la inmunidad incuestionablemente causa en dicho testigo el "deseo de complacer" a su "benefactor". Dicho de otra forma, y en términos crudos, el testigo está en disposición de declarar "lo que sea y lo que le digan". *¿Puede confiar, en consecuencia, el foro judicial en el testimonio de Francisco (Papo) Newman?* En otras palabras, *¿se justifica que unas personas sean condenadas a sufrir en prisión las penas de doscientos nueve (209) años (Lydia Echevarría Rodríguez) y ciento nueve (109) años (David López Watts) a base del testimonio de esa persona?*

La contestación a dichas preguntas, como es fácil imaginarse, no resulta ser muy fácil. Desafortunadamente, el Estado, al

---

A partir de la enmienda efectuada por la citada Ley Núm. 208 de 1974, el testimonio *único* del coautor es suficiente por sí sólo; se le exige, sin embargo, al juzgador de los hechos que lo examine "con desconfianza y cautela". Véase *Pueblo v. Agosto Castro*, 102 D.P.R. 441 (1974).

comparecer por *segunda ocasión* ante el foro judicial, *no* le proporcionó al juzgador de los hechos la información y los elementos de juicio necesarios para poder llegar a una confiable determinación al respecto. *No conocemos, en primer lugar*, la forma y manera en que el Departamento de Justicia, *en el año de 1984*, "llegó" hasta el testigo Juan Orlando Sepúlveda, c/p "Bronco", y en qué hechos y datos el referido departamento basó, en dicha ocasión, la decisión de comparecer con su testimonio al foro judicial a sostener unas acusaciones contra la señora Echevarría Rodríguez y los hermanos Guadalupe Núñez. *Tampoco conocemos, en segundo lugar*, en qué hechos y datos el Departamento de Justicia, *en el año de 1985*, basó su importante y fundamental determinación de que el testigo Sepúlveda era uno "perjuro y fabricado". Como expresáramos anteriormente, el departamento prefirió mantener en confidencia el famoso informe preparado por el Subsecretario de dicha dependencia gubernamental. *En tercer lugar, desconocemos* cómo "llegó" el departamento al testigo Francisco (Papo) Newman; las circunstancias bajo las cuales le fue concedida inmunidad a dicho testigo; si en adición a dicha inmunidad, el departamento le hizo algunas otras "concesiones" a Newman; y la identidad de las personas o funcionarios del Departamento de Justicia —y, por ende, la confiabilidad e integridad de las mismas— que interrogaron inicialmente a este testigo y la forma y manera en que se llegó a la etapa, y decisión, de la concesión de la inmunidad. *Sí sabemos, sin embargo*, dadas las *circunstancias imperantes* en la escena política en Puerto Rico en ese momento en particular y de la *actitud de los nuevos incumbentes*, del "interés" en reinvestigar y reesclarecer el caso Vigoreaux. Dicha situación, no hay duda, hacía "lucir mal" a la anterior administración de gobierno.

Independientemente de todo lo anteriormente expresado, *¿debe permitirse en nuestra jurisdicción que el Departamento de Justicia comparezca ante el foro judicial con dos (2) versiones completamente distintas sobre la comisión de un mismo hecho*

*delictivo en un plazo de siete (7) meses de diferencia?* [12] *¿No constituye dicha situación un hecho poco usual y preocupante? ¿No se supone que nuestro ordenamiento jurídico está orientado hacia la exigencia al Estado de que, al comparecer ante el foro judicial con el propósito de encausar criminalmente a un ciudadano, éste viene obligado a hacerlo con evidencia satisfactoria en derecho, obtenida la misma en una investigación profesional y completa?* Si es que ello se puede permitir en nuestra jurisdicción —por *excepción* y con el propósito de evitar un "fracaso de la justicia"— *entonces debemos exigirle al Departamento de Justicia que haga un descubrimiento ("disclosure") completo de la situación, brindándole al foro judicial, esto es, al juzgador de los hechos, toda la información necesaria y pertinente para que la conciencia de ese "juzgador" pueda estar tranquila respecto a la "confiabilidad" de la "segunda" versión del Estado.* Esa es la única forma *de garantizar la corrección y pureza de los procedimientos judiciales.* Es por ello que si el departamento no lo hace, *el foro judicial viene obligado a exigirle una explicación al respecto.* Debe quedar *meridianamente claro* que la Rama Judicial *no es una "marioneta" del Poder Ejecutivo.*

En el presente caso, *ni* el Departamento de Justicia voluntariamente lo hizo *ni* el tribunal de instancia lo exigió. Como hemos visto anteriormente, en el presente caso el tribunal de instancia procedió a archivar las acusaciones a base de la *escueta aseveración* de que el caso había sido sometido anteriormente a base de un testimonio perjuro; esto es, *no* se presentó prueba alguna al respecto *ni* el tribunal de instancia dilucidó *judicialmente* dicho hecho. *En estos momentos, dicha situación constituye no sólo una laguna inexplicada sino que una insalvable.* Bajo esas circunstancias, ¿qué garantía existe de que el testimonio de Francisco (Papo) Newman sea uno confiable? *Somos del criterio que la actuación de comparecer, en relación con los mismos hechos delictivos, en dos (2) ocasiones distintas con prueba*

---

[12] Debe recordarse que el Departamento de Justicia originalmente sometió el caso el día 2 de septiembre de 1984, resometiendo el mismo el día 14 de abril de 1985.

*irreconciliable entre sí y mutuamente excluyente —sin una explicación razonable y completa para dicha situación— es por sí sólo, razón suficiente para que el foro judicial absuelva al acusado por duda razonable.*

Pero, *todavía hay más.* La conducta que observara el propio departamento a nivel de instancia *demuestra que dicho departamento no confiaba mucho en el testimonio de Francisco (Papo) Newman.* Recordemos que —mientras todavía estaban pendientes y vigentes ante la Sala de San Juan del Tribunal Superior las acusaciones originalmente radicadas contra la señora Echevarría Rodríguez y los hermanos Guadalupe— dicho departamento, sin informarle nada a dicho foro judicial, resometió el caso ante el Tribunal de Distrito a base del testimonio de Newman. *¿Qué explicación, razonable y lógica, puede haber para que el Departamento de Justicia haya actuado en esa forma subrepticia e indebida? ¿Por qué no solicitar primero el archivo de las acusaciones pendientes ante el Tribunal Superior y luego proceder a resometer el caso?*

Como expresáramos en el escolio 9 de esta opinión, la *única explicación lógica* para dicho *indebido proceder* es que el departamento no estaba "muy seguro" de que podía obtener una determinación de causa probable a base del testimonio de "Papo" Newman y querían "ir a la segura". Ello, no hay duda, *demuestra la poca fe y confianza que tenía el propio departamento en el referido testigo*; falta de fe y confianza que, como hemos visto, lleva al Departamento de Justicia de Puerto Rico a incurrir en una conducta, a todas luces, indebida y represible; *conducta, repetimos, que no es digna del mencionado departamento ni del Secretario de la referida dependencia gubernamental.*

Reconocemos que, no obstante todos los fundamentos antes señalados en apoyo de la posición de que el testimonio de "Papo" Newman es uno "indigno de crédito", todavía se puede alegar en contrario que el Jurado que intervino en el presente caso —personas que, de ordinario, hemos dicho están en mejor posición que el tribunal apelativo para aquilatar la prueba testifical— le "creyó" a "Papo" Newman. *¿Por qué, entonces, proponemos la*

*intervención con, y revocación de, esa adjudicación de credibilidad que hizo el juzgador de los hechos a nivel de instancia, adjudicación que, de ordinario, merece gran deferencia?*

Lo hacemos, *en primer lugar*, llana y sencillamente debido a que entendemos que el Jurado que intervino en el presente caso no estuvo en posición óptima de avalar, y adjudicar, correctamente la credibilidad de Franciso (Papo) Newman. Como quedara plenamente demostrado, el Jurado no tuvo el beneficio de la mayor parte de los fundamentos —*y de la evidencia relativa a los mismos*— a los que hemos hecho referencia anteriormente; situación que obviamente afectó los veredictos que el Jurado rindió respecto a *ambos* apelantes. Por otro lado, estamos plenamente convencidos de que la *publicidad excesiva* de que en particular fue objeto la señora Echevarría Rodríguez prejuició a los jurados en contra de ésta; constituyendo evidencia fehaciente de dicho prejuicio, repetimos, los veredictos inconsistentes que, respecto al delito de asesinato en primer grado, rindió dicho Jurado.

*En tercer lugar*, e independientemente de lo antes expuesto, las innumerables *interrogantes y lagunas existentes en el presente caso respecto a tantos aspectos del mismo* —en específico, en cuanto al aspecto de la *repetitiva conducta impropia* en que incurrió el Departamento de Justicia a lo largo de todo el procedimiento— *impide que avalemos, y premiemos, esa conducta impropia* con una confirmación de las convicciones decretadas a nivel de instancia. *La actuación del Estado, la ausencia de una explicación satisfactoria y completa para la misma, causa en nuestro ánimo una profunda y fundada duda razonable:*

Somos del criterio que no existen palabras *para suficientemente enfatizar el hecho de que lo ocurrido en el presente caso es una situación verdaderamente inaudita y sumamente preocupante*. Ya haya ocurrido en el 1984, ya haya sido en el 1985, *la realidad es una*: funcionarios del Departamento de Justicia de Puerto Rico comparecieron ante el foro judicial con el fin de encausar criminalmente a unos ciudadanos, principalmente a base del testimonio perjuro de un testigo, con propósitos ajenos al de

hacer cumplida justicia. *No podemos avalar dicha conducta impropia, repetimos, mediante la confirmación de las convicciones decretadas a nivel de instancia.* Procede, en consecuencia, la revocación de las sentencias apeladas en cuanto a *ambos* apelantes.

XI

*Recapitulando*: la apelante Lydia Echevarría Rodríguez *nunca* debió ser sometida al proceso que culminó en las convicciones y sentencias apeladas; esto es, el proceso celebrado a base de las acusaciones que se sometieron en virtud del testimonio del testigo Francisco (Papo) Newman. Entendiéndose decretado, *por imperativo de ley*, el sobreseimiento de las acusaciones originalmente radicadas contra ella al amparo de las disposiciones de la Regla 247 de Procedimiento Criminal, ante, él Estado estaba *estatutariamente impedido* de radicar las acusaciones que culminaron en su convicción en virtud de lo establecido en el inciso (d) de la citada Regla 247 de Procedimiento Criminal. Las convicciones y sentencias contra ella dictadas, en consecuencia, *son nulas en derecho.*

Como si ello fuera poco, procede la revocación de las sentencias dictadas contra la señora Echevarría Rodríguez por el *fundamento adicional* de que *quedó plenamente demostrado* que la *publicidad excesiva* de que ella fue objeta —publicidad que originó, fomentó y propició ilegalmente el Estado— *prejuició indebidamente* al Jurado en su contra; constituyendo *evidencia fehaciente* de dicho prejuicio los *veredictos inconsistentes* que, en cuanto a ambos apelantes, rindiera el Jurado respecto al delito de asesinato en primer grado.

En tercer término, procede decretar la revocación de las sentencias apeladas en cuanto a *ambos* apelantes por el fundamento de que el Estado no cumplió en el presente caso con la obligación que tiene de probar la culpabilidad de un imputado de delito más allá de duda razonable; ello debido a que el testimonio del principal testigo de cargo es uno "indigno de crédito" y

*principalmente*, debido a que la *actuación del Estado de comparecer ante el foro judicial* con *dos (2) versiones distintas* sobre *unos mismos hechos delictivos —sin una explicación completa y satisfactoria para dicha situación—* lleva irremediablemente en sus entrañas una *duda razonable inherente* que *obliga al foro judicial* a *absolver* al imputado de delito *por duda razonable y fundada.*

## XII

Como podemos notar, resulta obvio que los apelantes Echevarría Rodríguez y López Watts *no tuvieron el juicio "justo e imparcial" que le garantiza nuestra Constitución a toda persona que en esta jurisdicción es acusada de la supuesta comisión de un delito público.* Los errores cometidos no sólo fueron varios sino que *los mismos revisten la más seria gravedad.*

Es por ello que sorprende que el Tribunal expresara en la opinión mayoritaria originalmente emitida que aun cuando

> . . . en el procedimiento seguido en este caso se ·podría identificar alguna que otra situación que se debió haber evitado o donde se pudo haber actuado de modo más apropiado, consideramos que tales situaciones no alcanzan el calificativo de errores de derecho como tales, ni siquiera de naturaleza no perjudicial. *Debe recordarse que el derecho a un juicio justo no significa el derecho a un juicio perfecto.* (Énfasis suplido.) *Pueblo v. Echevarría Rodríguez I*, ante, pág. 381.

Al disentir en el año de 1987 de la mayoría del Tribunal en el caso de *Pueblo v. López Rodríguez*, 118 D.P.R. 515, 545 (1987), expresamos, en lo pertinente, que:

> Nuestro sistema de justicia es "administrado" por seres humanos que, como tales, cometen errores. Ahí la *única* razón que puede justificar el que nos veamos impedidos de llevar a cabo "juicios perfectos". *Ello, sin embargo, debe ser siempre nuestro objetivo.* Aceptar como meta lo contrario, desafortunadamente tendrá *la consecuencia indeseada* de que cada día nuestro sistema de justicia será más imperfecto, *llegando el día en que el deterioro sea de tal magnitud que el mismo no sólo no será perfecto sino que tampoco será justo.* (Énfasis suplido y en el original.)

Realmente no hay excusa alguna para que este Tribunal, *consciente de que en el presente caso se han cometido errores graves a nivel de instancia que han tenido la consecuencia de impedir que el juicio celebrado haya sido uno justo e imparcial,* le dé la espalda a dicha situación y se escude detrás del débil argumento de que resulta imposible celebrar un juicio perfecto. Ello, más que otra cosa, denota una actitud de impotencia judicial.

## XIII

Con el cuestionable, y desesperado, objetivo de ratificar a toda costa la errónea decisión que emitiera el pasado 25 de abril de 1991, el Tribunal emite una segunda opinión en el presente caso. Aun cuando las personas *directamente perjudicadas* por esta lamentable actuación del Tribunal lo son, *sin duda,* los apelantes Echevarría Rodríguez y López Watts, *la verdadera víctima de la opinión emitida en reconsideración por el Tribunal en el día de hoy lo es nuestro ordenamiento jurídico.*

El Tribunal aparentemente se olvida del hecho fundamental de que la utilización por un tribunal apelativo del vehículo procesal decisorio de la "opinión" —a diferencia de la "sentencia" o la "resolución"— tiene la consecuencia de pautar el derecho en la jurisdicción en la cual dicho tribunal apelativo ejerce sus funciones. *¿Qué pautas establece la opinión hoy emitida?*

Un examen de la referida opinión revela que el Tribunal, en su inútil afán por refutar los señalamientos jurídicos que se hacen en la presente opinión disidente, *modifica sustancialmente o revoca dos (2) normas jurisprudenciales, de rica tradición e incuestionable corrección jurídica, vigentes en nuestra jurisdicción por largos años*; situación que afecta el buen nombre y reputación del Tribunal por cuanto, inclusive, pone *seriamente en entredicho* el grado de conocimiento que pueda tener la mayoría de los integrantes de este Foro sobre la naturaleza de los recursos que diariamente deben considerar y de las consecuencias de las decisiones que, respecto a dichos recursos, emiten.

La principal "espina" en el "costado" del Tribunal lo constituye nuestro primer fundamento, esto es, que el Estado estaba

*estatutariamente impedido* de radicar contra Lydia Echevarría las acusaciones que culminaron en las convicciones que hoy revisamos; ello, como demostramos anteriormente a la saciedad, por razón de que por imperativo de ley procedía ordenar el archivo de las acusaciones originalmente radicadas contra la señora Echevarría bajo las disposiciones de la Regla 247(b) de Procedimiento Criminal, ante. Dicho planteamiento lleva al Tribunal a desesperadamente esgrimir dos (2) argumentos con el propósito de refutar el mismo.

A esos efectos, *en primer lugar*, la mayoría insiste en su posición original de que no resulta procedente la consideración de dicho planteamiento por cuanto "la señora Echevarría Rodríguez *no levantó ni discutió esa cuestión directamente como error en su apelación ni en ninguna de las mociones de reconsideración* que ha presentado" ante el Tribunal. (Énfasis suplido y en el original.) Opinión mayoritaria, pág. 757.

Como debe resultar obvio para los conocedores del derecho en Puerto Rico, las expresiones antes mencionadas resultan desgraciadas por demás. Al así resolver, el Tribunal echa por la borda una rica y preciosa norma que hasta el día de hoy había *distinguido* a este Foro como un tribunal de justicia; norma *basada* en lo dispuesto en la Ley de 12 de marzo de 1903 (4 L.P.R.A. sec. 36)[13] y en docenas de decisiones hasta hoy emitidas.[14]

---

[13] *"Sección 36. Facultades como tribunal de apelación*

"El Tribunal Supremo de Puerto Rico constituirá de aquí en adelante un tribunal de apelación y no un tribunal de casación. En sus deliberaciones y fallos en todos los asuntos, tanto en lo civil como en lo criminal, dicho Tribunal no se limitará solamente a infracciones de ley o quebrantamientos de forma, según fueren señalados, alegados o salvados por los litigantes, o según se hiciera constar en sus exposiciones y excepciones, sino que con el más alto fin de justicia el Tribunal puede también entender en todos los hechos y tramitaciones en la causa tal como aparecieren en autos, considerando en igual forma sus méritos para la mejor administración de justicia y del derecho, y evitar injusticias y demoras.—Marzo 12, 1903, p. 58, sec. 1, ef. Marzo 12, 1903, p. 58, sec. 1, ef. Marzo 12, 1903."

[14] A manera de ejemplo, véanse: *Ab Intestato Marini Pabón*, 107 D.P.R. 433 (1978); *López v. Hosp. Presbiteriano, Inc.*, 107 D.P.R. 197 (1978); *Pueblo v. Santiago*, 106 D.P.R. 1 (1977); *Pueblo v. Colón Obregón*, 102 D.P.R. 369 (1974); *Santiago Cruz v. Hernández Andino*, 91 D.P.R. 709 (1965); *Pueblo v. Aletriz*, 85 D.P.R. 646 (1962); *Dávila v. Valdejully*, 84 D.P.R. 101 (1961); *Pueblo v. Túa*, 84 D.P.R. 39 (1961); *Reyes v. Reyes*, 76 D.P.R. 284 (1954); *Pueblo v. Rosado*, 78 D.P.R. 436 (1955); *Pueblo v. Sanjurjo*, 73 D.P.R. 574 (1952);

En segundo término, y a los mismos propósitos y efectos, aduce el Tribunal que "[s]e pretende, en la opinión minoritaria, atacar en este procedimiento *una sentencia final y firme* emitida en otro procedimiento en que se resuelve la misma cuestión entre las mismas partes". (Énfasis suplido.) Opinión mayoritaria, pág. 765. Somos los primeros en aceptar que resulta un tanto difícil entender la antes transcrita manifestación del Tribunal. Procedemos, en beneficio de la mayoría del Tribunal, a descifrar la misma. Se refiere el Tribunal al hecho de que luego que el foro de instancia, mediante la sentencia que emitiera el 20 de mayo de 1985, ordenara la desestimación de las acusaciones originalmente radicadas bajo la citada Regla 64(p) de Procedimiento Criminal, la señora Echevarría Rodríguez acudió en revisión de dicha actuación —*vía "certiorari"*— ante este Tribunal; proveyendo este Foro un no ha lugar al mencionado recurso de *certiorari*.

Esta es la *"sentencia final y firme* emitida en otro procedimiento . . . entre las mismas partes"* a la que, *increíblemente,* se refiere el Tribunal en su segundo argumento. (Énfasis suplido.) Opinión mayoritaria, pág. 765. *Conceptualmente, sin duda, el argumento del Tribunal es uno sobre cosa juzgada.* El argumento a esos efectos esgrimido por el Tribunal únicamente puede deberse a dos (2) razones: (1) que la desesperación por refutar nuestro planteamiento no tiene límite, o (2) al desconocimiento, por parte de la mayoría, de la naturaleza del recurso de *certiorari* y de la consecuencia jurídica del "tristemente famoso no ha lugar".

Como debería de ser del conocimiento de todos, una resolución denegatoria de un auto de *certiorari* no implica posición alguna del Tribunal respecto a los méritos de la causa sobre la cual trata dicho recurso. La resolución denegatoria *simplemente es índice de la facultad discrecional de este Tribunal para negarse a revisar en determinado momento una decisión emitida por un*

---

*Pueblo v. Lugo,* 69 D.P.R. 41 (1948); *Rivera v. Sucn. Lugo,* 42 D.P.R. 189 (1931); *El Pueblo v. Barrios,* 23 D.P.R. 831 (1916); *El Pueblo v. Lebrón,* 23 D.P.R. 658 (1916); *Pueblo v. Díaz (a) Leña Verde,* 10 D.P.R. 466 (1906).

*tribunal de instancia.* Regla 21 del Reglamento del Tribunal Supremo de Puerto Rico, 4 L.P.R.A. Ap. I-A.

El Tribunal aparentemente "olvida" que siendo discrecional la concesión o negativa de un auto de *certiorari*, una resolución que declare "no ha lugar" al mismo *no resuelve implícitamente cuestión alguna contra el peticionario a los efectos de cosa juzgada.* Así lo hemos resuelto. Véanse: *Suc. Meléndez v. DACO,* 112 D.P.R. 86 (1982); *Sucn. Andrades v. Sosa,* 45 D.P.R. 732 (1933).

Así, igualmente, lo ha decidido el Tribunal Supremo de los Estados Unidos en innumerables ocasiones: *Hughes Tool Co. v. Trans World Airlines,* 409 U.S. 363 (1973); *Indianapolis v. Chase National Bank,* 314 U.S. 63 (1941); *Mercer v. Theriot,* 377 U.S. 152 (1964); *Hanover Shoe v. United Shoe Mach.,* 392 U.S. 481, 488 n.6 (1968); *Maryland v. Baltimore Radio Show,* 338 U.S. 912 (1950); *Brown v. Allen,* 344 U.S. 443 (1953); *Sunal v. Large,* 332 U.S. 174 (1947); *House v. Mayo,* 324 U.S. 42 (1945); *Atlantic Coast Line R. Co. v. Powe,* 283 U.S. 401 (1931); *Seney v. Swift & Co.,* 260 U.S. 146 (1922); *Hamilton Shoe Co. v. Wolf Brothers,* 240 U.S. 251 (1916); *Ohio Ex Rel. Eaton v. Price,* 360 U.S. 246 (1959).

*En síntesis, queda sobre aviso la clase togada del País que de hoy en adelante el Tribunal no atenderá ni resolverá ninguna cuestión que no le sea planteada frontalmente en el proceso de revisión, no importa la injusticia que conlleve la no consideración del error cometido pero no levantado, y, que el "no ha lugar" que el Tribunal emita en un recurso de "certiorari" constituye, en Derecho, "cosa juzgada".*

En cuanto al señalamiento del "enjuiciamiento —sumamente duro— del Secretario de Justicia [Lcdo. Rivera Cruz] que se hace en la opinión disidente" (opinión mayoritaria, pág. 766), resulta, cuando menos, sumamente curioso que en la nueva opinión mayoritaria *únicamente* se haga una defensa del licenciado Rivera Cruz y no del ex Secretario Martínez Acosta, el cual igualmente es enjuiciado en nuestra ponencia. No se nos ocurre, *de momento,* razón alguna para la diferencia que en cuanto a esta situación hace la mayoría de los integrantes del Tribunal.

## XIV

Termina la nueva opinión mayoritaria haciendo una reflexión sobre la "justicia" que debe imperar en nuestra jurisdicción. Dicha reflexión constituye una increíble ironía. Al respecto, procede señalar que en el pasado, ante una situación demostrativa de que se había errado al emitirse una decisión, *este Tribunal nunca vaciló en corregir su equivocación.* Evidencia *maravillosa y fehaciente* de ese *hoy añorado proceder* lo constituye la decisión que se emitiera en *Reyes Coreano v. Director Ejecutivo,* 110 D.P.R. 40 (1980). La actitud *entonces reinante* en el seno del Tribunal quedó plasmada para la posteridad en la extraordinaria terminología con que se comenzó la mencionada decisión, a saber:

> El temor de que se nos tache de inconsistentes no debe impedir que reconsideremos la opinión emitida en este caso el pasado 20 de noviembre. Persistir en el error para realzar la consistencia de lo decidido constituiría una abdicación del deber que tenemos, como tribunal apelativo, de impartir justicia y de pautar el derecho. Es por ello que abordamos nuevamente la controversia cuya solución hemos intentado en dos opiniones anteriores. *Reyes Coreano v. Director Ejecutivo,* ante, pág. 42.

La referida actitud y disposición de hacer cumplida justicia —*esa fina sensibilidad*— es una hoy *ausente* del seno del Tribunal. En la actualidad, en lugar de reconsiderar y corregir el error cometido anteriormente, *se intenta explicar y justificar la injusticia cometida.* El Tribunal se olvida de que los hechos del presente caso trascienden, *inclusive,* la cuestión de si los apelantes son o no culpables de los hechos que se le imputan y de que *de lo que verdaderamente se trata es de la ilegal utilización del procedimiento criminal pautado por nuestro ordenamiento jurídico por unos funcionarios públicos que representan al Estado en nuestra jurisdicción y que se supone actúen conforme a la ley,* actuación o conducta impropia que desemboca en la crasa violación del debido proceso de ley y de los derechos civiles de unos ciudadanos, todo ello con el impropio propósito de adelantar unos intereses políticos personales. Ello resulta ser no sólo monstruoso sino aterrador.

Si ello es posible que ocurra en nuestro País *sin* que la Rama Judicial *investigue a fondo, rechace* y *condene* dicha ilegal actuación, *¿qué garantías tienen nuestros conciudadanos de que no le ocurrirá lo mismo a uno de ellos en el mañana?* La contestación es sencilla: *Ninguna*. Es por ello que disentimos.